**UNITED STATES of America, Appellee,**

v.

**Larry Dale ROSS, Appellant.**

**No. 83–1273.**

United States Court of Appeals, Eighth Circuit.

Submitted July 27, 1983.

Decided Aug. 5, 1983.

Jack Holt, Jr., Little Rock, Ark., for appellant.

George W. Proctor, U.S. Atty. by D. Brent Bumpers, Asst. U.S. Atty., Little Rock, Ark., Pat Harris, Paralegal Specialist, for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Larry Dale Ross was convicted of conspiring to knowingly transport in interstate commerce highly explosive materials, in violation of 18 U.S.C. §§ 842(a)(3)(A) and 371. The explosives were admitted as evidence at the trial.[1] Ross claims error because the seizure of the explosives resulted from a violation of federal wiretapping law when a telephone lineman testing a line overheard his conversation, and because probable cause did not exist for issuance of the search warrant used in the seizure. We affirm.

On November 5, 1981 Jimmy Dean Gregory, an employee of Allied Telephone Company in Sheridan, Arkansas, installed a telephone at the residence of Keith Laffoon. Shortly thereafter someone at the Laffoon residence complained to the phone company about excessive noise on the line, and Gregory was told to check it. The noise level of the line could not be tested if it was in use. About a quarter to a half mile from the Laffoon residence Gregory broke onto the line and heard a conversation between two women in progress. He then put down his headset and began clipping weeds in the area. When he checked the line for a second time the women were still talking. On the third check Gregory heard a man later determined to be Ross and a woman talking. The woman stated "the heat is on," and "the Buick is being watched real close." The man replied "you need to get out." He then asked her whether she had "the stuff." She answered yes, but she thought she was supposed to pick up dynamite, and the stuff she had was soft like clay. The man replied "Babe, that's it." She then said she had hidden the stuff in the freezer, and he told her to put it in a garbage bag with some clothes and load it in the car before she left.

Gregory, convinced that the conversation concerned criminal activity, went to the sheriff's office approximately 40 minutes later, and disclosed the details of the conversation. Gregory signed a statement setting out the substance of the conversation. The next day the sheriff drafted an affidavit for a search warrant based on Gregory's statement. The Sheridan municipal judge then issued a search warrant authorizing

1. The Honorable George Howard, Jr., United States District Judge, Eastern District of Arkansas.

the search of the Laffoon house, its occupants, and a Buick at or en route to the house for illegal explosives. The sheriff executed the warrant three days later, finding explosives in the trunk of a Buick, owned by Ross, parked on the Laffoon property. Ross and others were subsequently arrested and charged with conspiring to knowingly transport in interstate commerce highly explosive materials in violation of 18 U.S.C. §§ 842(a)(3)(A) and 371.

Ross filed pre-trial motions to suppress, arguing that admission of the explosives would violate federal wiretapping law and that the search warrant was issued without probable cause. The district court rejected these arguments. At trial the explosives were admitted as evidence, and Ross was convicted.

### I. *Federal Wiretapping Law*

Ross first argues that the motion to suppress should have been granted since Gregory's interception and disclosure of the contents of the telephone conversation which led to the seizure of the explosives violated federal wiretapping law.

Under federal wiretapping law it is a felony for any person to willfully intercept or willfully disclose the contents of a wire communication.[2] It is, however, not unlawful for an officer or employee of a communication common carrier to intercept or disclose the contents of a wire communication while engaged in an activity which is necessary to the rendition of his services. 18 U.S.C. § 2511(2)(a)(i).[3] To deter the use of illegally obtained information, Congress also provided that whenever a communication has been intercepted, no part of its contents nor any evidence derived therefrom may be received as evidence in a trial, if the disclosure of the information would violate wiretapping law. 18 U.S.C. § 2515.

Whether Gregory's interception and disclosure of the telephone conversation violated 18 U.S.C. § 2511(1)(a) and (c), and if so, whether the exception in 18 U.S.C. § 2511(2)(a)(i) is applicable here, are the questions before us.

To violate 18 U.S.C. § 2511(1)(a) and (c), an interception and disclosure of a wire communication[4] must be done *"willfully."* The burden of proving willfulness rests on the defendant as the party seeking to suppress the evidence. *United States v. Phillips,* 540 F.2d 319, 325 (8th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976). The legislative history of section 2511 reveals that Congress intended "willfully" to mean *more than* intentional. S.Rep. No. 1097, 90th Cong., 2d Sess. 70, *reprinted in* 1968 *U.S.Code Cong. & Ad.News* 2112, 2181. For the interception or disclosure of a wire communication to be *a crime,* it must be done "with a bad purpose ... without justifiable excuse, ... stubbornly, obstinately [or] perversely." *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933).[5]

---

**2.** 18 U.S.C. § 2511(1)(a) & (c) provide in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts ... any wire communication; [or] ...

(c) willfully discloses ... to any other person the contents of any wire—... communication, knowing or having reason to know that the information was obtained through the interception of a wire ... communication in violation of this subsection ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** 18 U.S.C. § 2511(2)(a)(i) provides:

(2)(a)(i) It shall not be unlawful ... for an operator of a switchboard, or an officer, employee or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service ... *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

**4.** A telephone conversation is a "wire communication" within the meaning of the statute. *United States v. Axselle,* 604 F.2d 1330, 1334 (10th Cir.1979).

**5.** The Senate Report cites *Murdock* to explain the meaning of "willfully." The Court in *Murdock* noted that although "willfully" often denotes an intentional or voluntary act, in criminal statutes it generally means more than intentional. 290 U.S. at 394, 54 S.Ct. at 225.

■ The district court found that Gregory's interception of the telephone conversation was not willful because it occurred in the normal course of his employment while he was attempting to check the noise level on the Laffoon's line. In reviewing determinations that are made by a district court in the context of a motion to suppress, this circuit applies the clearly erroneous standard. Under this standard, we ordinarily affirm a decision unless there is not substantial evidence to support it, it evolves from an erroneous view of the applicable law, or upon considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982). Substantial evidence supports the district court's finding that Gregory's interception was not willful, and we cannot conclude that this finding was clearly erroneous. Gregory had a legitimate reason for briefly monitoring the conversation on the three separate occasions: he had to determine that the line was unoccupied before testing the noise level.

The district court did not examine whether Gregory's disclosure of the telephone conversation to the sheriff was willful and whether it violated 18 U.S.C. § 2511(1)(c). A close reading of subsection 2511(1)(c), however, reveals that for a disclosure to be unlawful, the person making the disclosure must know or have reason to know that *the interception* which preceded the disclosure *violated subsection 2511(1)(a).* As we have held Gregory's interception of the telephone conversation did *not* violate subsection 2511(1)(a), his disclosure of that conversation could not have violated subsection 2511(1)(c).

Furthermore, we believe that the limitations Congress placed on the willful disclosure of wire communications in subsection 2511(1)(c) should not be examined in a vacuum. As the Supreme Court has emphasized, a "deeply rooted social obligation" exists for citizens to report felonies to the authorities. *Roberts v. United States,* 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980). We are unwilling to say that Gregory's fulfillment of his obligation as a citizen in disclosing the telephone conversation to the sheriff violated the wire tap law.

■ We also believe that Gregory's interception would fall within the exception in subsection 2511(2)(a)(i). As an installer for a telephone company Gregory is an employee of a "communication common carrier." [6] As the district court found, Gregory's random monitoring of the telephone conversation occurred because he was attempting to check the service quality of the Laffoon's line. The interception of the wire communication occurred in the normal course of his employment while he was engaged in an activity necessary to the rendition of the service. His activity falls squarely within the language of the exception.

In summary, federal wiretapping law was not violated by the admission of the explosives into evidence. Neither Gregory's interception nor his disclosure of the telephone conversation was unlawful; therefore the admission of the explosives discovered as the result of the interception and disclosure was not prohibited. *See* 18 U.S.C. § 2515.

Our conclusion is reinforced by the decisions of two other circuits that have examined § 2511(1)(a). *United States v. Axselle,* 604 F.2d 1330 (10th Cir.1979), found that the interception of the defendant's telephone conversation by a motel switchboard operator while connecting his call was not willful. Similarly *United States v. Savage,* 564 F.2d 728 (5th Cir.1977), held that the brief interception of the defendant's phone conversation by a motel switchboard operator while placing his call was within the exception, 18 U.S.C. § 2511(2)(a)(i) and was not willful.

---

**6.** 18 U.S.C. § 2510(10) defines this term by cross-reference to another statute (47 U.S.C. § 153(h)), which provides: " 'common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communications by wire or radio . . . ."

## II. Probable Cause for Issuance of the Warrant

■ As his second ground for arguing that the district court erred in admitting the explosives into evidence, Ross contends that the search warrant used to seize the explosives was not based on probable cause.[7] Specifically he complains that the sheriff's affidavit was deficient because it contained no facts demonstrating the credibility of the informant, Gregory.

The Supreme Court has recently re-examined the approach that reviewing courts should take in determining whether a search warrant based on an informant's tip is supported by probable cause. In *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court abandoned the *Aguilar/Spinelli* "two-pronged test," reaffirming the "totality of the circumstances" approach. *Id.* at ——, 103 S.Ct. at 2329. The issuing magistrate's task is "simply to make a practical, common-sense decision whether, given all the circumstances, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The informant's "veracity," "reliability" and "basis of knowledge" are still important issues to examine, but these issues should be understood as "relevant considerations in the totality of the circumstances analysis," not as separate requirements for a finding of probable cause. *Id.* at ——, 103 S.Ct. at 2329. Furthermore, "the duty of reviewing courts is simply to ensure that the magistrate had a 'substantial basis . . . for conclud[ing]' that probable cause existed." *Id.* at ——, 103 S.Ct. at 2332. And in carrying out this duty, reviewing courts should accord great deference to the magistrate's determination of probable cause. *Id.* at ——, 103 S.Ct. at 2331.

■ In the present case, the affidavit used in issuing the search warrant contained the following information: the informant's name; that he was a local resident and a full-time employee of Allied Telephone Company; that he obtained the information while checking noise problems on a telephone line; the first names of the two individuals discussing dynamite and "soft plastic stuff"; the model of car (Buick) involved in the transportation of explosives; and where the explosives would be located. The affidavit clearly revealed the basis of the informant's knowledge: his interception of a telephone conversation while checking a line for noise problems. Moreover, the circumstances surrounding the interception and the specificity of the information given demonstrated that the information was reliable. We here deal with a citizen informant with no motive to falsify, rather than a professional informant, with attendant credibility concerns. *See United States v. Dennis,* 625 F.2d 782, 791 (8th Cir.1980). The district court specifically found that Gregory had no reason to exaggerate or falsify the information he gave to the sheriff.

In conclusion, we are convinced that the magistrate had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. The admission of the explosives violated neither Ross's fourth amendment right nor federal wiretapping law. We therefore affirm his conviction.

---

**7.** We reject Ross's argument that since a state court magistrate issued the warrant, state law must be used to examine whether there was probable cause for its issuance. Whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by an unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers. *United States v. Montgomery,* 708 F.2d 343 at 344 (8th Cir.1983).