UNITED STATES of America, Appellee,

v.

Dennis Lee CLARK, Appellant.

No. 83–2422.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1984.

Decided Sept. 12, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 4, 1984.

Arnold, Circuit Judge, dissented with opinion.

Scott F. Tilsen, Asst. Federal Public Defender, D. Minn., Minneapolis, Minn., for appellant.

James M. Rosenbaum, U.S. Atty. by Thorwald Anderson, Jr., Asst. U.S. Atty., D. Minn., Minneapolis, Minn., Shari L. LePage, Legal Intern, for appellee.

Before ROSS, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Dennis Lee Clark appeals from his two-count conviction for obstruction of correspondence. Clark contends that the postal inspectors who arrested him did so without probable cause and thus the search of his person conducted incident to arrest violated his fourth amendment rights. We affirm.

**PROCEDURAL BACKGROUND**

Clark was arrested without warrant and searched incident to arrest on May 10, 1983. He was subsequently charged in a five-count indictment with obstruction of correspondence in violation of 18 U.S.C. § 1702. Clark pled not guilty to the charges and filed a motion to suppress evidence, claiming a violation of his fourth

amendment rights. A hearing was held before a magistrate and the magistrate recommended that the motion to suppress be denied. Clark then entered a conditional plea of guilty to two of the five counts in district court, specifically reserving his right to appeal an adverse determination of his pretrial motion to suppress. Following Clark's plea the district court adopted the magistrate's recommendation and denied the motion to suppress. We uphold the denial of Clark's motion to suppress and affirm his conviction.

**FACTS**

The record evidence, viewed in the light most favorable to the government, as it must be in reviewing the denial of a motion to suppress, *United States v. Massey,* 687 F.2d 1348, 1356 (10th Cir.1982); *United States v. Jackson,* 652 F.2d 244, 246 (2d Cir.), *cert. denied,* 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981), reveals the following facts.

Clark was employed as a mail sorter by the Courage Center, a non-profit rehabilitation center for the physically disabled in Golden Valley, Minnesota. His job assignment, along with that of one other Courage Center employee, involved the opening and sorting of mail for Courage Center residents. Clark was also responsible for returning misaddressed letters to the post office.

In response to a report from the Courage Center's office and personnel manager that the center was not receiving all of the charitable contributions being mailed to it, Postal Inspectors Thomas Rucke and Mike George conducted an investigation. On the morning of May 10, 1983, the inspectors sent a test letter, addressed to a non-resident and containing currency, to the Courage Center. Later that day, the postal inspectors conducted a search of the mailroom and the sack of mail being returned to the post office in an attempt to locate the test letter. After failing to locate the test mailing, the inspectors decided to interview Clark.

Clark was interviewed in a vacant office on the second floor of the Courage Center.

At the outset of the interview, Clark was advised of his *Miranda* rights and informed that he was not under arrest nor was he obligated to answer the inspectors' questions. Clark was also told that he could terminate the questioning. The interview was conducted in conversational tones. The officers did not threaten Clark, touch him, or display weapons. At no time during the interview did Clark give the officers any indication that he wanted to terminate the questioning, talk to a lawyer, or leave the room.

The inspectors questioned Clark with respect to mailroom procedures and with respect to his knowledge of the missing test letters. Clark admitted awareness of the fact that mail was missing, but insisted he was not responsible. The inspectors showed Clark a photocopy of the test mailing, and upon their doing so, Clark became very nervous. Clark was asked to reveal the contents of his pockets. He refused to do so unless he was under arrest. He asked the inspectors if he was under arrest and he was again informed that he was not.

After Clark refused to reveal the contents of his pockets, Inspector George left the room to phone for instructions on how to proceed. Clark requested on one or two occasions to make a telephone call to the Golden Valley Police Department for the announced purpose of having that department place him under arrest so the inspectors could search him. There was a telephone in the room where the interview was taking place. Inspector Rucke informed Clark that Inspector George was using the line on another extension and that Clark could use the telephone later. According to Clark, as he stood up and headed toward the telephone, Inspector Rucke told him, "Sit down. You can use the phone later." Clark was not intimidated by the officer's remarks. According to Clark, since the officers "had told me that they were finished questioning me, [I felt] that I had the right to leave, because I was not under arrest."

Inspector Rucke testified that while waiting for Inspector George to complete his

telephone call and return with instructions, Clark "suddenly got up [and] ran toward a back door." As he departed, Clark shoved a chair in front of Inspector Rucke. As Clark headed toward the door, Inspector Rucke got out of his chair and moved around a table toward Clark. Clark ran out of the Courage Center and was pursued on foot by Inspector Rucke and the Courage Center's personnel director. He was eventually located in the intensive care unit of a nearby hospital. Inspector Rucke and Clark returned to the office at which time Clark was formally arrested and searched incident to arrest. A two dollar bill that had been placed in the test letter was located on Clark's person.

## DISCUSSION

■ Postal Service officials are authorized to make warrantless arrests "if they have reasonable grounds to believe that the person to be arrested has committed or is committing" a felony. 18 U.S.C. § 3061(a)(3). "Reasonable grounds" is the equivalent of probable cause. *United States v. Roberson*, 650 F.2d 84, 86 (5th Cir.), *cert. denied*, 454 U.S. 1100, 102 S.Ct. 675, 70 L.Ed.2d 642 (1981). *See United States v. Watson*, 423 U.S. 411, 415–16 n. 4, 96 S.Ct. 820, 823–824 n. 4, 46 L.Ed.2d 598 (1976).

On appeal, Clark maintains that the inspectors lacked probable cause to arrest him, and consequently, the search of his person cannot be justified as a search incident to a lawful arrest. The district court decided that the facts and circumstances within the knowledge of the inspectors at the time of arrest supported a probable cause determination that Clark had committed a crime. The decision of the district court may not be set aside unless it is clearly erroneous. *United States v. Everroad*, 704 F.2d 403, 405 (8th Cir.1983); *United States v. Childress*, 721 F.2d 1148, 1150 (8th Cir.1982), *aff'd on rehearing*, 715 F.2d 1313 (8th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984). Under the "clearly erroneous" standard of review, we must affirm the decision unless it lacks "substantial evi-

dence to support it, it evolves from an erroneous view of the applicable law, or upon considering the entire record, we are left with a definite and firm conviction that a mistake has been made." *United States v. Ross*, 713 F.2d 389, 392 (8th Cir.1983).

Initially, we must determine when Clark was arrested in view of the fact the district court considered Clark's flight in making its probable cause determination. Clark contends that he was, in fact, arrested prior to his departure from the Courage Center. The government, on the other hand, contends that Clark was not under arrest until after his flight from the interview room, and consequently, it was appropriate for the district court to consider Clark's flight in making its probable cause determination. We agree with the government's position.

■ "[A]rrests are 'seizures' within the meaning of the fourth amendment * * *." *United States v. Ilazi*, 730 F.2d 1120, 1123 (8th Cir.1984). A police encounter constitutes a seizure "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *I.N.S. v. Delgado*, — U.S. —, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)); *see United States v. Sadosky*, 732 F.2d 1388, 1392 (8th Cir.1984); *United States v. Capers*, 685 F.2d 249, 251 n. 3 (8th Cir. 1982). The mere questioning of an individual, where the individual remains free to disregard the questions and walk away, does not constitute a fourth amendment seizure. *See United States v. Mendenhall*, *supra*, 446 U.S. at 554, 100 S.Ct. at 1877; *Dupree v. United States*, 380 F.2d 233, 235 (8th Cir.1967). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United*

*States v. Mendenhall, supra,* 446 U.S. at 554, 100 S.Ct. at 1877.

■ We conclude that Clark was not under arrest at the time of his flight from the Courage Center interview room. Initially we note that Inspectors Rucke and George took steps to ensure Clark that his liberty was not being restrained. Clark was interviewed on the Courage Center premises, he was informed on more than one occasion that he was not under arrest, and further, that he was not obligated to answer the postal inspectors' questions. The postal inspectors' questioning of Clark was friendly and non-accusatory. Significantly, Clark never stated that he did not want to answer the inspectors' questions, he never requested to speak to a lawyer, and at no point during the questioning period did he indicate a desire to leave.

Clark requested to use the telephone to call the Golden Valley Police Department. Although Clark gives two varying accounts as to what Inspector Rucke said to him as he stood up to use the telephone, we necessarily view the facts in the light most favorable to the government. *United States v. Massey, supra,* 687 F.2d at 1356. When Clark got up from his chair and headed toward the telephone, Inspector Rucke told him, "Sit down. You can use the phone later."

■ The dissent points to this statement by Inspector Rucke as evidence of a restraint on Clark's liberty. We do not so view the comment. In analyzing the impact of Inspector Rucke's statement, we should not lose sight of Clark's stated purpose in requesting use of the telephone. When Clark requested to use the telephone to have himself arrested by a local police department, he was informed that Inspector George was using the phone line in another room. Clark, however, persisted in his attempt to use the phone by standing up and heading over to it. It was at this time that Inspector Rucke stood up and stated, "Sit down. You can use the phone later." It cannot be said that Inspector Rucke either intentionally denied Clark access to use of the phone line or restrained

Clark's liberty to leave the interview room. Inspector Rucke merely prevented Clark from picking up the phone at a time when Inspector George was on the line. Not insignificantly, Clark testified that after Inspector Rucke's comment, he felt he had the right to leave the interview room.

■ A short time later, Clark suddenly stood up and ran toward the door of the interview room. Inspector Rucke then stood up and started to move across the room toward Clark, in his words, to prevent Clark from leaving. Clark had already commenced his flight from the interview room at the time Inspector Rucke moved toward him. It cannot be said that Clark's flight was a response to the physical movement of Inspector Rucke. Because Inspector Rucke's movements were made in response to Clark's flight, they cannot be considered in determining whether Clark was under arrest prior to or at the time of his flight from the interview room. Further, Inspector Rucke's intent to prevent Clark's departure is relevant only insofar as it was conveyed to Clark prior to the initiation of his flight from the interview room. *See Berkemer v. McCarty,* —— U.S. ——, ——, 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984); *United States v. Mendenhall, supra,* 446 U.S. at 554 n. 6, 100 S.Ct. at 1877 n. 6. Clark does not claim that as he got up to leave the interview room, Inspector Rucke said anything to stop him from departing. Under the circumstances of this case, we cannot conclude that a reasonable person, in Clark's position, would have believed he was under arrest at the time of the flight from the interview room.

Having concluded that Clark was not under arrest until he was apprehended in the intensive care unit of a nearby hospital, we must determine whether there was probable cause to arrest Clark at that time. At oral argument before this court, Clark's counsel stated that he could not seriously argue with the district court's determination that Clark's flight coupled with the other facts within the postal inspectors' knowledge gave the inspectors probable cause to arrest Clark. We agree.

■ The existence of probable cause to make a warrantless arrest depends upon "whether, at the moment the arrest was made, * * * the facts and circumstances within (the arresting officer's) knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *United States v. Capers, supra,* 685 F.2d at 251 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). A probable cause determination should not be made on the basis of isolated facts, but rather on the cumulative effect of the facts in the totality of the circumstances. *See United States v. Everroad, supra,* 704 F.2d at 406.

■ At the time of Clark's arrest, the postal inspectors were aware of the following facts. Clark was responsible for opening the Courage Center's incoming mail and returning misaddressed letters to the post office. Clark and one other Courage Center employee sorted the incoming mail. Consequently, Clark had direct access to the test letter mailed by the inspectors. When the inspectors displayed a copy of the test letter to Clark, he became very nervous. While waiting for Inspector George to finish his phone call, Clark suddenly got up and fled the room. Notably, flight from law enforcement officers is a strong indicia of *mens rea,* "and when coupled ·with specific knowledge on the part of the officer relating the suspect to the evidence of crime, [is a] proper factor[ ] to be considered in the decision to make an arrest." *Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–1905, 20 L.Ed.2d 917 (1968). Under these facts, the district court's determination that the warrantless arrest of Clark was supported by probable cause is not clearly erroneous.

1. There was a telephone in the interview room. Tr. 15. Presumably Inspector George, who was on the phone at the time, was in another room, but talking on the same line.

2. The Court says, *ante* at 1259, that "Clark never stated that he did not want to answer the inspectors' questions ... and at no point during the questioning period did he indicate a desire to

In conclusion, we find that, in viewing the facts in the light most favorable to the government, Clark was not under arrest until after his flight from the Courage Center interview room. Clearly, there was probable cause to arrest Clark at that time. Accordingly, we affirm.

ARNOLD, Circuit Judge, dissenting.

I think Inspector Rucke's actions in the interview room would have caused a reasonable person to believe he was not free to leave. Therefore, Clark's arrest took place at that point. The government does not argue, and the District Court did not find, that probable cause to arrest existed at that time. It follows that the fruits of the arrest were unlawfully seized, and that the conviction should be reversed and the cause remanded for trial, at which the United States would have an opportunity to prove Clark's guilt without the aid of unconstitutionally seized evidence.

When Clark asked to use the phone, Officer Rucke said, "Sit down. You can use the phone later." *Ante,* at 1257, quoting Transcript of the Hearing on the Motion to Suppress (Tr.) 31. Clark had gotten up and was walking over to the phone.[1] Tr. 15. The officer did not merely tell Clark that the phone was in use and that he could use it later. He "stood up and ... kind of pulled his pants up ... and instructed [Clark] ... to sit down and to remain seated." Tr. 15–16. Thus, a direct order was given with respect to Clark's physical movements.

Then, while Inspector George was still on the phone, Clark got up to leave.[2] Inspector Rucke "got up to prevent Clark from leaving." *Ante,* at 1259. I do not see how an official intention to restrain Clark's physical movements could have been more clearly indicated. The Court argues that although Inspector Rucke *intended* to pre-

leave." This statement is correct, but only in a very narrow sense. Clark had refused the officers' request that he empty his pockets, and by getting up to leave the room he surely indicated, more clearly than any words could have, that he did not wish to answer any more questions or to remain in the room.

vent Clark's departure, this intent was never conveyed to Clark. With respect, I disagree. According to the Magistrate (whose findings the District Court accepted) "[o]n his way out, [Clark] shoved a chair in front of" Rucke. Designated Record 6. The conclusion that Clark reasonably thought Rucke was trying to keep him from leaving the room is inescapable.

It is hard to develop much sympathy for the defendant, of course. The incriminating evidence was found on his person, as is often the case in motion-to-suppress situations. It seems clear that he has violated a federal statute. What we cannot know for sure is how many innocent people will be restrained or searched without probable cause, if the officers' conduct in this case is approved. For an innocent person whose rights are so violated is usually not prosecuted. He does not have to make a motion to suppress. He simply goes on his way, and the unconstitutional conduct of the government never comes to the attention of any court. It is the innocent that the Fourth Amendment is intended to protect, and it is the innocent who suffer when it is not enforced.

I respectfully dissent.