UNITED STATES of America, Plaintiff,

v.

Harold R. ANDERSON, Craig A. Anderson, Defendants.

No. 84–0925–JLI–Crim.

United States District Court,
S.D. California.

Jan. 9, 1985.

Patrick K. O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Peter J. Hughes, A Professional Corp., San Diego, Cal., John G. Phillips, San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

IRVING, District Judge.

Defendants' motion to suppress evidence came on for hearing at 2:00 P.M. December 10, 1984, before the Honorable J. Lawrence Irving. Patrick K. O'Toole appeared on behalf of the government; Peter J. Hughes appeared on behalf of defendant Harold R. Anderson, John G. Phillips appeared on behalf of defendant Craig A. Anderson.

Having considered the pleadings, the testimony presented and the oral argument of counsel, the court issues the following memorandum decision.

## FACTUAL BACKGROUND

On October 7, 1984, at 7:40 A.M., San Diego County Narcotics Task Force Officer Robert Baker made a telephonic application to San Diego County Municipal Court Judge Runston G. Maino for a warrant to search defendants' residence located at 782 Knoll Park Lane, Fallbrook, CA (hereinafter "782 Knoll Park"). Officer Baker verbally presented the following information to Judge Maino. At 3:00 A.M. that morning Fallbrook police deputies Morrell and Pine responded to a prowler call at 861 Hillpark Lane, Fallbrook, which is a residence at the rear of 782 Knoll Park Lane. While inspecting the rear yard of the 861 Hillpark Lane residence, they observed a hole in a fence dividing the 861 Hillpark and 782 Knoll Park properties. The officers then spoke with a man standing on the Knoll Park property.[1] They informed the man that they were responding to a prowler call and directed his attention to the hole in the fence and footprints leading to his property. The man told the officers that he had inspected his property and that he believed the prowler had left.

Ten to fifteen minutes later, Officers Morrell and Sime stopped a suspicious vehicle, approximately one mile from the Knoll Park residence. The vehicle contained four people; Steven Laszko and three juveniles. The three juveniles were arrested for curfew violations and Laszko was arrested for attempted burglary. All were taken to the Fallbrook Police substation and read their *Miranda* rights. Laszko told the officers that he had been at 782 Knoll Park that evening and saw two greenhouses with marijuana growing inside. Laszko also told the officers that he had taken a short cut through the property a month before and had seen many marijuana plants in two greenhouses at that time, and had noticed an overwhelming marijuana odor. He also said that on the evening of October 7, 1984, he and the three juveniles had gone to the property to steal some marijuana.

Officer Baker then told Judge Maino that all three juveniles had been interviewed by Deputy Morrell and all had corroborated Laszko's story. The juveniles reported that they had gone to 782 Knoll Park to steal marijuana plants with Laszko and while there were confronted by an individual with a shotgun. Baker also reported that one of the juveniles admitted having gone to the 782 Knoll Park property on one prior occasion and stealing marijuana plants. Baker told Judge Maino that the deputies had recovered a plastic bag containing a marijuana bud from one of the juveniles who admitted acquiring the bud at the Knoll Park property.[2]

Laszko was then sworn as a witness by Judge Maino, and questioned by the Deputy District Attorney William Holman. Laszko admitted to being at the property

---

1. The record does not identify the man and is unclear as to the positioning of the officers at the time of the conversation.

2. The record does not indicate whether the marijuana bud was acquired on the October 7 trip to 782 Knoll Park or on the earlier visit.

on two prior occasions[3], and finding six foot marijuana plants in two greenhouses there. He also admitted going there at midnight that evening, in the company of the three juveniles. Laszko told Judge Maino that he had jumped a fence to get onto the property, while the juveniles crawled through a hole in the fence. Laszko said that as they were prowling about the property they encountered a man with a shotgun, and they fled. Through the Deputy District Attorney's questioning, it was established that Laszko had had prior experiences with marijuana and that while on the property on October 7, 1984, he had seen silhouettes of plants that appeared to be marijuana and had detected the odor of marijuana.

Based upon the foregoing, and further testimony regarding Agent Baker's knowledge of marijuana cultivation in the Fallbrook area, Judge Maino issued a search warrant for the premises at 782 Knoll Park.

The officers executed the warrant at 8:30 A.M. that morning. Large plant potters with freshly turned, moist soil, containing marijuana debris were found. Two illegal aliens were also found, one in the guest house on the property and the other near one of the greenhouses. The aliens informed the officers that they aided the two Andersons in loading plants into a truck earlier that morning and the truck then drove away. Defendants move to suppress this evidence, and the fruits thereof, as products of a search pursuant to an illegal search warrant.

## DISCUSSION

The court addresses only one issue arising from this motion: Whether in a federal prosecution, state or federal law should be applied to defendants' motion to suppress evidence acquired in a search conducted by a state officer pursuant to a warrant issued by a state magistrate? Defendants argue that state law[4] should be applied. They further argue that the warrant issued by Judge Maino is illegal under California law and the evidence recovered must be suppressed. The government argues that the legality of the warrant should be adjudged by the federal standard set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The Ninth Circuit has not yet decided this issue. The Ninth Circuit addressed the issue in dicta in *United States v. Henderson*, 721 F.2d 662, 665 (9th Cir.1983) *cert. denied* —— U.S. ——, 104 S.Ct. 2665, 81 L.Ed.2d 370:

> We believe that it would undercut the deterrent function of a state's exclusionary rule if state officers were able to turn illegally seized evidence over to federal authorities whenever they suspected the subject of the investigation of an offense susceptible to federal as well as state, prosecution. We think there is much to be said for the argument that federal courts should, in the interest of comity, defer to a state's more stringent exclusionary rule with respect to evidence secured without federal involvement.

■ Mindful of the Ninth Circuit's statement, this court finds that the situation contemplated in *Henderson* is not present here. In this instance, the court finds that there was no bad faith forum shopping on the part of the Narcotics Task Force (hereinafter "NTF") agents. NTF Agent Baker testified that this case was brought to federal authorities for prosecution for the following reasons: 1) it appeared to be more sophisticated than other marijuana cases, 2) he expected conspiracy to be charged, 3) two of the material witnesses were illegal aliens, and 4) he anticipated forfeiture proceedings to be initiated. Agent Baker also testified that the fact that the search might be illegal under state law did not enter into

---

**3.** Laszko later testifies that after his initial discovery of marijuana at the 782 Knoll Park address, he returned to the property four times.

**4.** Because the court applies a federal standard, it does not address the question of what the state standard would be or whether the search warrant was legal under state law.

his decision to bring the case to the U.S. Attorney's Office.

The absence of bad faith in this case is also supported by Agent Baker's testimony that in his jurisdiction, telephonic search warrants are not available from federal magistrates. In this instance, agents had no choice but to go to a state magistrate.[5]

In other cases where Fourth Amendment challenges required a selection between state or federal law, the Ninth Circuit and other circuits have applied federal law. In *United States v. Smith*, 595 F.2d 1176, 1179 (9th Cir.1979) the Ninth Circuit held that the District Court was correct in making an independent inquiry on the constitutional validity of an automobile search conducted by state officers, irrespective of the suppression of the same evidence by the state court. *See also United States v. Garrett*, 680 F.2d 650, 651 (9th Cir.1982) (District Court required to make independent inquiry into admissibility of state-supplied evidence in federal proceeding without regard to previous suppression in state action). *Accord United States v. Staller*, 616 F.2d 1284, 1298 n. 7 (5th Cir.1980), (District Court should apply federal, not state law, in motion to suppress evidence obtained in inventory search conducted by state police). The Ninth Circuit has also held that the admissibility in federal court of evidence obtained through electronic surveillance, which may have violated state law, should be judged by application of a federal constitutional and statutory law. *United States v. Keen*, 508 F.2d 986, 989 (9th Cir.1974); *United States v. Hall*, 543 F.2d 1229, 1234–35 (9th Cir.1976).

The Eighth Circuit has held that whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by an unreasonable search

and seizure is to be judged as if the search and seizure had been made by federal officers. *United States v. Montgomery*, 708 F.2d 343, 344 (8th Cir.1983); *United States v. Ross*, 713 F.2d 389, 393 n. 7 (8th Cir. 1983).

The court feels that federal constitutional law applies. This case was initially filed by federal prosecutors in federal court and as a rule, federal constitutional law applies.

■ Applying the test established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) the court finds that Judge Maino had probable cause to issue a warrant. Given the totality of the circumstances, including the corroborated telephonic affidavit of Laszko, the court finds that there was a fair probability that contraband or evidence of a crime would be found at 782 Knoll Park Lane. Accordingly,

IT IS ORDERED that defendants' motion to suppress is denied.

---

**5.** The court recognizes that this prosecution may differ from that in *Henderson* in that the involvement of the Narcotics Task Force may be construed as federal involvement. The court recognizes that the Narcotics Task Force is a hybrid agency receiving federal funds and training. In view of the court's holding, it is unnecessary to enter into the unwieldy task of determining the extent of federal involvement. The court feels that the test applied by the Third

Circuit, which requires determination of whether an investigation is state or federal in character and measurement of the extent of involvement by federal officers, is unworkable and provides little guidance to agents in the field. *See United States v. Bedford*, 519 F.2d 650 (3d Cir.1975). Thus, for the purposes of this motion, the court will assume that warrant was sought by state officers.