# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1450
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Shahid R. Pratt, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 9, 2003

Filed: January 27, 2004 (corrected 2/13/04)
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.
_____

BEAM, Circuit Judge.

Shahid R. Pratt, a felon, entered a conditional plea of guilty to possessing ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In so doing, he preserved the right to appeal the district court's[1] denial of his suppression motion. Pratt now exercises that right. We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

## I.    BACKGROUND

Officers Gary Snyder and Anthony Melkowski happened upon Pratt while on routine patrol in a marked police cruiser at around nine-o'clock on the evening of March 15, 2002, in Kansas City, Missouri. Pratt was walking eastbound in the middle of 43rd Street, near Tracy Avenue, even though sidewalks were provided on both sides of the street. Pratt had been arrested on prior occasions by Officer Snyder for drug violations, outstanding warrants, and traffic violations, so Officer Snyder recognized Pratt when he came into view. Officer Snyder also knew Pratt was a convicted felon and, on previous occasions, dispatch had informed Officer Snyder that Pratt was "10-31," meaning he had been armed during prior encounters with the police.

Officers Snyder and Melkowski approached Pratt in their cruiser. Pratt looked at the officers over his left shoulder twice, and then jogged to an adjacent open lot. The officers concluded he was trying to avoid them.

When Pratt reached the open lot, he leaned over and appeared to spit something from his mouth. Officer Snyder had observed him do the same thing in December 1999 during an arrest in the same area. On that occasion, Pratt spat crack cocaine.

The officers decided to do a "pedestrian check" on Pratt because he was violating a municipal ordinance and state law by walking in the street. They drove into the open lot, got out of the cruiser, and approached Pratt on foot. Upon their approach, Pratt turned his back to the officers and put his hands in his pants-pockets. The officers ordered him to remove them three times to no avail. Given Pratt's non-compliance and shifty behavior, the officers removed his hands from his pockets and placed him in handcuffs. The officers testified that they handcuffed Pratt to ensure both their and Pratt's safety and did not regard Pratt as being under arrest at that time.

Once in handcuffs, Officer Melkowski patted down Pratt's outer clothing and felt something in his front left pants-pocket. Believing the item was a weapon, Officer Melkowski then reached into the pocket and pulled out five rounds of live ammunition. A drug dog was then summoned to the scene to search for the item Pratt had spit from his mouth. Nothing was found.

Because the officers knew Pratt was a felon, he was placed under what the officers termed an "investigation arrest" for possessing ammunition. He was also given a ticket for walking in a street with sidewalks alongside.

Pratt moved to suppress the ammunition in the district court, contending that when Officer Melkowski reached into his pocket and retrieved the ammunition, he violated the Fourth Amendment prohibition on unreasonable searches because he exceeded the proper scope of a protective "frisk" under Terry v. Ohio, 392 U.S. 1 (1968). The district court, adopting the report and recommendation of the magistrate judge, concluded the officers did not exceed the scope of Terry. Therefore, the suppression motion was denied.

Pratt appeals, making the same challenge he made in the district court. Pratt does not challenge the initial contact between him and the officers, nor the officers' use of handcuffs to detain him.

## II.    DISCUSSION

"We review the factual findings of the district court as to what the parties said or did for clear error; we review the district court's finding that the Fourth Amendment has not been violated de novo." United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc). We may affirm the district court's denial of the motion to suppress on any ground the record supports. United States v. Snook, 88 F.3d 605, 608 (8th Cir. 1996).

-3-

Pratt's warrantless search must fall within an exception to the warrant requirement of the Fourth Amendment to be reasonable. Relevant to this case are the exceptions for Terry searches and searches incident to arrests. Terry provides an exception to the warrant requirement for limited searches (i.e., "frisks") of persons "stopped" by police if the police reasonably suspect the individual is armed. This type of search is limited to a pat-down of the individual's outer clothing, but the officer may seize items from the individual's pockets if the incriminating nature of the item is immediately apparent through the officer's sense of touch. See Minnesota v. Dickerson, 508 U.S. 366, 375-77 (1993).

Also, if an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets. United States v. Robinson, 414 U.S. 218, 226, 236 (1973). A search incident to arrest is justified by the concern for officer safety and the need to collect evidence of the offense. Id. at 234. But, the presence of either justification need not be established in a particular case. That is, officers need not have any reason to think the individual is armed or that evidence of the crime will be found on his person. It is the fact of arrest that enables the officer to conduct a search, not a particularized suspicion as to the suspect's dangerousness. Id. at 235-36. Searches incident to arrests are not limitless, but they are unconstrained by the limits enunciated in Terry and its progeny regarding frisks.

To determine which search standards apply to Pratt, we must determine whether he was arrested or stopped. The standard for determining when police-citizen contact constitutes an arrest for purposes of a search incident to arrest is unclear. The Fourth Amendment itself does not mention arrests or stops; rather it protects individuals from unreasonable "seizures." Traditionally, the term "arrest" denoted a seizure of the person. Dunaway v. New York, 442 U.S. 200, 208 (1979). Thus, all arrests were seizures and vice versa, and probable cause to arrest was always required. Id. A person was, and still is, "seized" by "the slightest application of

physical force" or when he submits to a "show of authority." <u>California v. Hodari D.</u>, 499 U.S. 621, 625, 628-29 (1991). The test for a seizure by "show of authority" is objective and asks whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." <u>Id.</u> at 628 (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)).

The traditional equivalence of seizures of the person and arrests was clouded by <u>Terry</u>. <u>Terry</u> carved out an exception to the probable-cause requirement. Specifically, <u>Terry</u> allows officers to make minimally intrusive seizures so long as there exists reasonable suspicion that criminal activity is afoot. These seizures have been dubbed "stops." Post-<u>Terry</u>, the term "arrest," or "*de facto* arrest," has been used to describe those seizures that exceed the bounds of <u>Terry</u>—those seizures that, given their intrusiveness generally or in a given case, can be justified only upon a showing of probable cause. <u>See, e.g.,</u> <u>United States v. Bell</u>, 183 F.3d 746, 749 (8th Cir. 1999) (stating that exceeding the scope of <u>Terry</u> constitutes a *de facto* arrest which must be accompanied by probable cause); <u>Kaupp v. Texas</u>, 123 S. Ct. 1843, 1847 (2003) (concluding that "removal from one's house in handcuffs on a January night with nothing on but underwear for a trip to a crime scene on the way to an interview room at law enforcement headquarters" could not be justified on anything less than probable cause).

Though a seizure exceeding what is allowed under <u>Terry</u> is a *de facto* arrest, an arrest is not limited to that which exceeds <u>Terry</u>. As the Court stated in <u>Hodari D.</u>: "<u>Terry</u> unquestionably involved conduct that would constitute a common-law seizure; its novelty (if any) was in expanding the acceptable *justification* for such a seizure, beyond probable cause." 499 U.S. at 627 n.3. Thus, the term "stop" is a label attached to certain seizures that are justified by reasonable suspicion. However, if an officer has probable cause, any inquiry into other acceptable justifications for the seizure is largely superfluous. <u>See</u> <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 347 n.16 (2001) ("<u>Terry</u> certainly supports a more finely tuned approach to the Fourth

Amendment when police act without the traditional justification that . . . probable cause (in the case of arrest) provides; but at least in the absence of 'extraordinary' circumstances, there is no comparable cause for finicking when police act with such justification." (citation omitted)); United States v. Houston, 892 F.2d 696, 703 (8th Cir. 1989) (holding that probable cause existed at time of alleged "stop"; thus, it was not "necessary to determine whether a Terry stop was justifiable"). Thus, when police act upon probable cause to arrest, the term "seizure" is synonymous with the term "arrest" under the Fourth Amendment.

The fact that a seizure of a person predicated upon probable cause is properly regarded as an arrest, is fully supported by case law in the analogous forum of traffic stops. See United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647-48 (8th Cir. 1999) (refusing to apply a Terry analysis, and the *de facto* arrest doctrine arising thereunder, to a traffic stop predicated on probable cause: "A traffic stop is not investigative; it is a form of arrest, based upon probable cause that a penal law has been violated."); United States v. Childs, 277 F.3d 947, 952-53 (7th Cir.) (en banc), cert. denied, 537 U.S. 829 (2002) (stating traffic stops based on probable cause are arrests; thus, the limits of Terry are inapplicable); accord Berkemer v. McCarty, 468 U.S. 420, 439 n.29 (1984) (Fifth Amendment case stating: "We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a Terry stop."); Whren v. United States, 517 U.S. 806, 813 (1996) (characterizing a traffic stop based on probable cause as a "traffic-violation arrest" and holding that the presence of probable cause for the arrest vitiates the relevance of the officer's subjective intent to investigate the possibility of other criminal activity). And, this explains why handcuffing an individual can be a reasonable measure under Terry, see United States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999), or constitute an arrest for search-incident-to-arrest purposes, see United States v. Hawkins, 59 F.3d 723, 727 (8th Cir. 1995), vacated and remanded on other grounds, 516 U.S. 1168 (1996) (mem.).

Applying this analysis to the instant case, Pratt was arrested. First, the officers had probable cause to arrest Pratt before they approached him.[2] The officers observed Pratt violating state and local law and were authorized[3] under state and local law to arrest him for such a violation. See Atwater, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); Mo. Ann. Stat. § 300.405.1 (West 2003) ("Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."); Kansas City, Mo., Code of Ordinances § 70-786(a) (1994) (similar); Mo. Ann. Stat. § 544.216 (West 2002) (delineating powers of arrest to include the power to "arrest on view, and without a warrant, any person the officer sees violating . . . any law of this state, including a misdemeanor or infraction, or has violated any ordinance

---

[2]"We may recognize the existence of probable cause on appeal, though the district court did not analyze the situation in similar fashion." United States v. Sturgis, 238 F.3d 956, 959 n.3 (8th Cir. 2001) (citing United States v. Abadia, 949 F.2d 956, 958 n.12 (8th Cir. 1991)).

[3]We do not revisit the issue of how state law impacts the Fourth Amendment inquiry where officers are not authorized to make an arrest under state law because the officers here were empowered under Missouri law to arrest Pratt. See United States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995) (stating limitations on officers' arrest power imposed by state law were irrelevant to the constitutionality of a search incident to an arrest for operating a bicycle without a headlight). Suffice it to say, we recognize the narrow protections afforded by the Fourth Amendment under the Court's holdings in the arrest and search-incident-to-arrest cases. In any event, we leave it for another case, and the en banc court, to overrule Bell. See United States v. Lewis 183 F.3d 791, 794-96 (8th Cir. 1999) (Heaney and Goldberg, JJ., concurring) (urging the en banc court to overrule Bell). This seems especially prudent in light of the Court's dependence on state law in Atwater. 532 U.S. at 354-55 (holding the handcuffing, transporting, and jailing of an individual as authorized by Texas law for violating a fine-only seatbelt ordinance did not violate the Fourth Amendment).

over which such officer has jurisdiction"); Kansas City, Mo., Code of Ordinances § 480 (1994) (similar).

Second, because the officers had probable cause to arrest Pratt, Terry is inapplicable. Pratt was therefore arrested if he was seized, and in this case Pratt was seized when he was physically restrained by the officers. See Hodari D., 499 U.S. at 624-25; cf. United States v. Clark, 743 F.2d 1255, 1258-59 (8th Cir. 1984) (applying the Mendenhall standard and determining arrest occurred when a reasonable person, in the defendant's position, would have felt he was not free to leave). Thus, Pratt was arrested for purposes of the subsequent search. See Sibron v. New York, 392 U.S. 40, 66-68 (1968) (companion case to Terry in which the Court held defendant Peters was lawfully arrested for search-incident-to-arrest purposes when the officer had probable cause to arrest and effectuated that arrest for constitutional purposes when he grabbed Peters by the collar); id. at 77 (Harlan, J., concurring) ("There is *no* case in which a defendant may validly say, 'Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards.' . . . [W]hile certain police actions will undoubtedly turn an encounter into an arrest requiring antecedent probable cause, the prosecution must be able to date the arrest as *early* as it chooses following the development of probable cause.").

Although the officers testified that they did not believe they had arrested Pratt when they physically restrained him, this fact does not change the outcome. An officer's uncommunicated subjective intent is irrelevant to the question of whether an individual has been seized. Mendenhall, 446 U.S. at 554 n.6; Bloomfield, 40 F.3d at 916. As we have explained above, when probable cause to arrest exists, the standard for determining whether an arrest has occurred is the same as that for determining whether a seizure has occurred.

Because Pratt was arrested, the question becomes whether the subsequent search of his person was reasonable under the Fourth Amendment. The search of an arrestee's person has long been upheld as reasonable under the Fourth Amendment, and we see no reason to depart from this notion here. See Chimel v. California, 395 U.S. 752, 762-63 (1969); Sibron, 392 U.S. at 66-68; id. at 77 (Harlan, J., concurring), quoted with approval in, Robinson, 414 U.S. at 229.

Because the search here was incident to a lawful arrest, Pratt's pocket was lawfully searched and the bullets found. Having come by the evidence lawfully, and knowing Pratt was a felon, the officers also had probable cause to continue their arrest of Pratt on the additional possessory offense.[4] The district court properly denied the motion to suppress.

---

[4]We do not think the fact Pratt was ultimately given a citation for walking in the street impairs our analysis. In Knowles v. Iowa, 525 U.S. 113 (1998), the Court concluded it could not "extend" Robinson to a situation in which a traffic offender had been observed speeding and had been given a citation, because none of the traditional rationales for the Robinson rule were present. Id. at 118-19. In light of the Court's cases cited above, applying the search-incident exception in this case involves no extension of Robinson beyond an arrest. Moreover, we do not read Knowles as foreclosing the search-incident-to-arrest exception where the officer has not yet issued a citation and ultimately does subject the individual to a formal arrest on one of multiple grounds lawfully established. See United States v. Unverzagt, 424 F.2d 396, 399 (8th Cir. 1970) (holding, under objective inquiry, that probable cause to arrest the defendant for carrying a concealed weapon justified the arrest and the incidental search even though the reason articulated for the arrest was his possession of stolen money orders found in the search); accord United States v. Bookhardt, 277 F.3d 558, 564-67 (D.C. Cir. 2002) (holding, under Whren, that probable cause to arrest the defendant for reckless driving justified the arrest and incidental search even though the officer's articulated reason for the arrest was invalid). Additionally, we question the applicability of Knowles outside the area of routine traffic stops.

## III.  CONCLUSION

Accordingly, we affirm.

_____