# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3806

_____

United States of America,      *
     *
         Appellee,      *
     *     Appeal from the United States
     v.      *     District Court for the Western
     *     District of Arkansas.
Michael Donta Salone,      *
     *         [UNPUBLISHED]
         Appellant.      *

_____

Submitted: May 10, 2005
Filed: May 19, 2005

_____

Before LOKEN, Chief Judge, BEAM, and SMITH, Circuit Judges.

_____

PER CURIAM.

Michael Salone entered a conditional plea of guilty to one count of possession with intent to distribute fifty grams or more of cocaine base, and one count of aiding and abetting that crime, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Salone appeals the district court's[1] denial of his motion to suppress physical evidence

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, adopting the report and recommendation of the Honorable Beverly Stites Jones, United States Magistrate Judge for the Western District of Arkansas.

seized and statements made after police stopped the car in which he was a passenger. Salone argues that the stop, his prolonged detention, and his warrantless arrest violate his Fourth Amendment rights, and he argues that evidence gathered as a result of those violations should have been suppressed as "fruit of the poisonous tree." Having carefully reviewed the record and arguments presented, we affirm.

## I.    BACKGROUND

Corporal Wayne Barnett of the Fort Smith, Arkansas, Police Department testified at the suppression hearing of Salone's co-defendant, Clarence Steele. The parties adopted that testimony at Salone's suppression hearing. Barnett testified that in January 2004, he learned from a confidential informant (CI) that Salone (a/k/a "Bones") and Steele (a/k/a "C") were selling crack cocaine to Phillip Prendergrast (a/k/a "Smoke"). The CI, who had a prior criminal conviction for cocaine possession and had been reliable in the past, told police that (1) Salone and Steele had come from California with a large quantity of powder cocaine and were living in an apartment at 1805 South Y Street in Fort Smith; (2) they were dealing from apartment #10, occupied by Thell Parker, and that they lived in the apartment directly behind #10; (3) Parker and Prendergrast were selling drugs for Salone and Steele; and (4) Salone and Steele had "rocked up" part of the crack cocaine.

Police began corroborating the CI's information by verifying that Thell Parker indeed occupied apartment #10 at 1805 South Y Street. They later set up surveillance of the apartment and attempted a controlled buy with the CI, but no buy occurred. The CI said that Salone and Steele believed the police were on to them, and that the two were planning to leave town. The CI also told police that the two had moved to apartment 4B at 10908 Old Harbor Road. Police set up surveillance of this location and observed a man, whom the CI later told the police was James Dotson, enter and leave that apartment. The police followed Dotson to a house on South 10th Street. The CI also said that on January 13, Salone and Steele planned to box up their drugs

and mail them to California, and that Dotson would be driving them out of town. The CI told police that the drugs would be concealed inside a stuffed animal and the stuffed animal would be packaged inside a wrapped Nintendo game box.

On the morning of January 13, police set up surveillance of both apartment 4B at 10908 Old Harbor Road and the house on South 10th Street. They observed Dotson leave the house and followed him to apartment 4B, where he entered and emerged a few minutes later with Salone and Steele. As the three left, Barnett testified he heard a fellow officer on the police radio state that it appeared one of the men was carrying something under his arm, like a box. The three drove off and police attempted to follow, but they lost the car in traffic. The three men eventually returned to apartment 4B, where police observed them re-enter the apartment and eventually leave carrying duffel bags and coats. They placed these items in the trunk of the car. Police officers stopped the car as it drove away.

The police ordered the men from the car and separated them. Dotson had been driving, and Sergeant George Lawson, who was assisting with the arrest, spoke with him. Lawson explained to Dotson why they had stopped the car and advised him of his Miranda rights. Dotson volunteered to Lawson that he had mailed, at Steele's direction, a package containing a stuffed animal addressed from a Smith in Fort Smith to a Smith in California, but that he didn't know what was inside the toy. This interview lasted five minutes.

Meanwhile, officers had been searching both the car and the men, and found $2,500 on Steele's person and over $3,000 in Salone's duffle bag. They found no drugs in the car. Lawson told Barnett that the package they were looking for had already been mailed, and proceeded to tell Barnett what Dotson had said. The police detained the men for approximately thirty minutes while officers retrieved the package from the post office, which indeed was a taped Nintendo box. Police then formally arrested Salone and Steele. A warrant was obtained to search the package,

and officers found a stuffed animal inside, filled with 68.1 grams of cocaine, and Steele's fingerprints on the box.

Lawson gave Salone his Miranda warnings at the police station. Salone said (1) he was a longtime drug dealer; (2) when he came to Fort Smith by bus five days earlier, Steele was already there with cocaine powder; (3) he and Steele mailed about half a kilogram of powder back to California; (4) they had sold about two to four ounces; and (5) Dotson had filled out the shipping label for the shipment back to California and Steele had provided the address.

## II.    DISCUSSION

Salone first argues that the initial stop of the car in which he was riding was an unconstitutional seizure because officers lacked probable cause.  This argument is wholly without merit.  The Fourth Amendment guards against unreasonable searches and seizures.  "Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment." United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994).  A seizure of the person, supported by probable cause, is reasonable and thus does not violate the Fourth Amendment.  Such seizures are properly considered arrests for Fourth Amendment purposes. See United States v. Pratt, 355 F.3d 1119 (8th Cir. 2004).

We are satisfied that the facts, recited above, provided police with probable cause to seize–i.e., arrest–the occupants of the car.  "Probable cause to conduct a warrantless arrest exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Haggard, 368 F.3d 1020, 1023 (8th Cir. 2004) (quotation omitted).  In this case, that reasonably trustworthy information was provided by the CI.  "The information from a [CI] is sufficiently reliable if it is

corroborated by other evidence, or if the informant has a history of providing reliable information." United States v. Lucca, 377 F.3d 927, 933 (8th Cir. 2004). "The totality of the circumstances analysis . . . does not mandate that both factors be present [for probable cause to exist]." Id. "Instead, a strong showing of one may compensate for a deficiency in the other." Id. During his testimony, Barnett made reference that the CI in this case had been reliable in the past. But more importantly, the information the CI gave police was corroborated by police at almost every turn, including the occupants of residences, the movements of the suspects, the shipment of the box, Salone's and Steele's attempt to leave town, and Dotson's driving of the car. We conclude that probable cause existed to stop the car.

Salone next argues that the length of detention after the car was stopped exceeded that allowed for an investigatory stop, and that probable cause did not exist for the warrantless formal arrests of the occupants. But these arguments are precluded by our conclusion that this stop was an arrest supported by probable cause, and not merely an investigatory stop or a stop for a traffic infraction.

We need not address Salone's final argument, that all physical evidence and statements of any occupants gleaned from this stop should be suppressed as "fruit of the poisonous tree," because we have held that this stop was reasonable.

## III.  CONCLUSION

Accordingly, we affirm.

_____