# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-4385

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEENAN L. JACKSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-30028—**Richard Mills**, *Judge.*

ARGUED APRIL 16, 2004—DECIDED JULY 28, 2004

Before EASTERBROOK, RIPPLE, and DIANE P. WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Police in Springfield, Illinois, stopped Keenan Jackson for a traffic offense. He was not carrying a driver's license. After a check of identifying details via the computer terminal in the squad car implied that the driver might not be who he claimed, Officer Sapetti decided to detain Jackson until his identity could be established. Sapetti handcuffed Jackson and, before seating him in the police car, patted him down for weapons; he found a hard item in Jackson's crotch. The object turned out to be more than 50 grams of crack cocaine, and Jackson was indicted for a violation of 21 U.S.C. §841. After the district

court denied his motion to suppress this evidence, Jackson entered a conditional guilty plea that preserved his right to appeal the question whether Officer Sapetti violated the fourth amendment.

Sapetti testified at the suppression hearing that Jackson had changed lanes without signaling. Jackson denied committing any traffic offense. The judge believed Sapetti rather than Jackson. Given that finding, Sapetti had probable cause to arrest Jackson. See *Whren v. United States*, 517 U.S. 806 (1996). And it is reasonable for the police to search the body, clothing, and immediate possessions of anyone in custody following an arrest on probable cause. Jackson's situation is a replay of *Gustafson v. Florida*, 414 U.S. 260 (1973): Gustafson was stopped for a traffic violation, arrested and taken into custody when he could not produce a driver's license, and searched. The Court held that search reasonable. *Gustafson* and its companion *United States v. Robinson*, 414 U.S. 218 (1973), announce the bright-line rule that police are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed or carrying contraband. The district court found that Sapetti had searched Jackson incident to a valid arrest and as a result held that the cocaine would be admissible against Jackson.

Jackson does not contend that the district judge's factual conclusion is clearly erroneous. Nor does his appellate lawyer deny that a search incident to arrest is automatically valid under the fourth amendment. His brief does not cite *Gustafson*, *Robinson*, or *Whren*. Instead Jackson contends that Officer Sapetti did not have the level of suspicion that would have justified a pat-down search under *Terry v. Ohio*, 392 U.S. 1 (1968). It is hard to see why that matters, given the probable cause for his arrest. The holding of *Gustafson* and *Robinson* is that police who make an arrest on probable cause do not *need* person-specific suspicion that the suspect is carrying something dangerous. To get anywhere, there-

fore, Jackson had to challenge the district judge's conclusion that Sapetti had effected a valid arrest, yet counsel did not make any contention along these lines.

Omission of that argument does not result in plain error. The principal authority on which Jackson might have relied (had his lawyer been alert) is *Knowles v. Iowa*, 525 U.S. 113 (1998), which held that drivers stopped for a routine traffic offense and given citations without being taken into custody may not be searched as a matter of routine. Cf. *Berkemer v. McCarty*, 468 U.S. 420 (1984) (routine traffic stop does not create the sort of custody that requires *Miranda* warnings). *Knowles* limits *Robinson* and *Gustafson* to custodial arrests; it instantiates the principle that the reasonableness of a search depends on what the officers actually do, not what they might have done. The police did not detain Knowles before conducting the search. When *Knowles* was issued, the Court had yet to decide whether a full custodial arrest for an offense punishable only by a fine is permissible; three years later the Justices held that this step is proper. See *Atwater v. Lago Vista*, 532 U.S. 318 (2001). See also *Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001). *Knowles* itself observed that the driver's failure to produce a valid license or other proper identification could support custody. 525 U.S. at 118. And as *Knowles* explained it is *custody*, and not a stop itself, that makes a full search reasonable: officers' needs to protect themselves and preserve evidence are what justify the rule allowing searches of arrested persons.

So let us go step by step through the events that led to the cocaine's discovery. First step: stop of the car. That was supported by probable cause, given the district judge's finding of fact. Second step: request for the driver's license. This is reasonable in any traffic stop supported by probable cause. See also *Hiibel v. Sixth Judicial District Court*, No. 03-5554 (U.S. June 21, 2004) (even for a *Terry* stop the officer may insist that the suspect provide identification).

Third step: deciding to detain Jackson in the cruiser after he did not hand over a driver's license, and information from the police database raised doubts about his identity. This is proper in principle given *Atwater* and must be called reasonable under the circumstances. Once Jackson failed to produce a driver's license, the police could not put him back in the car and watch him motor off. (Jackson was traveling alone; no passenger was available to get behind the wheel.) Moreover, he could have been a fugitive. See *United States v. Garcia*, No. 04-1006 (7th Cir. July 15, 2004). Such a person might claim, as Jackson did, not to be carrying a driver's license or other document that revealed his identity. Sapetti told him—even while slapping on the handcuffs—that he was not "under arrest" but was just being "detained" while more identity checking occurred. The officer's language does not change the facts, however: there was probable cause to believe that Jackson had committed a crime, and he was (reasonably) taken into custody. It does not matter for current purposes what label the officer applied at the scene; analysis under the fourth amendment is objective, as we discussed in *Garcia*.

Fourth step: searching a person about to be held for an indefinite period. Here the justification for that precaution, as articulated in *Knowles* and applied in *Robinson* and *Gustafson*, is present in full measure. Sapetti found the drug in a place from which Jackson could have retrieved a weapon had he possessed one. It would have been foolhardy to trundle Jackson into the squad car without ensuring that he was unarmed. Sapetti was entitled to reduce danger to himself before securing Jackson in the back seat for however long it took to find out who he really was. Likewise Sapetti was entitled to preserve any evidence that Jackson may have been carrying. That the search turned up drugs rather than a gun (or bogus identification) does not make it less valid.

AFFIRMED

RIPPLE, *Circuit Judge*, dissenting. The key question in this case is the type of detention to which Mr. Jackson was subject while waiting for Officer Sapetti to investigate his identity. As noted by the majority, the subjective intent of both parties—Officer Sapetti and Mr. Jackson—are irrelevant to the inquiry: The justification for the stop, as well as the nature of the resulting detention, both are governed by an objective standard. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003) ("A suspect is under custodial arrest when 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree which the law associates with formal arrest.'") (quoting *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999)). However, whereas the unstated intentions of Officer Sapetti in instituting the stop may be irrelevant to the probable cause determination, his stated intentions—that he was not placing Mr. Jackson under arrest—are a factor to consider in assessing whether a reasonable person in Mr. Jackson's circumstances would conclude that he was under arrest. *See Ochana*, 347 F.3d at 270 ("Ochana had no reason to believe that he was under custodial arrest for any offense. He was not told that he was under arrest . . . ."); *United States v. Corral-Franco*, 848 F.2d 536, 541 (5th Cir. 1988) (accord); *cf. United States v. Mendenhall*, 446 U.S. 544, 555 n.6 (1980) ("We agree with the District Court that the subjective intention of the DEA agent in this case to detain the respondent, had she attempted to leave, is irrelevant except insofar as that may have been conveyed to the respondent."); *United States v. Pratt*, 355 F.3d 1119, 1124 (8th Cir. 2004) ("Although the officers testified that they did not believe they had arrested Pratt when they physically restrained him, this fact does not change the outcome. An officer's *uncommunicated*

*subjective intent* is irrelevant to the question of whether an individual has been seized." (citation omitted; emphasis added)).

Considering Officer Sapetti's statements and the other circumstances surrounding Mr. Jackson's detention, I do not believe that the detention amounted to a full custodial arrest. Officer Sapetti did not tell Mr. Jackson he was under arrest; to the contrary, the officer told Mr. Jackson that he was not under arrest. Officer Sapetti detained Mr. Jackson for the purpose of investigating his identity; the officer gave no indication that Mr. Jackson's moving violations were the reason for his being held. Furthermore, the nature of the detention, as communicated by Officer Sapetti to Mr. Jackson, was going to be brief—the officer was going to handcuff Mr. Jackson and secure him in the police car; Mr. Jackson was not being transported to police headquarters for booking. Far from suggesting an arrest, Mr. Jackson's detention has all of the markings of a *Terry* stop—"a brief, investigatory stop," *United States v. Ocampo*, 890 F.2d 1363 (7th Cir. 1989), for the purpose of determining whether "criminal activity may be afoot," *Terry v. Ohio*, 392 U.S. 1, 30 (1968). And, therefore, Officer Sapetti's search of Mr. Jackson must be evaluated as a search incident to a *Terry* stop.

It is well-established that an officer conducting a *Terry* stop may conduct a protective search of the suspect for the purpose of "the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 26. Furthermore, if during a lawful patdown of a suspect's outer clothing, an officer "feels an object whose contour and mass makes its identity immediately apparent" and "if the object is contraband, its warrantless seizure [is] justified." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The question, therefore, is whether it was "immediately apparent" to Officer Sapetti that the object located on Mr. Jackson was contraband. Stated another way, was Officer

Sapetti "acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in [Mr. Jackson's pants] was contraband." *Dickerson*, 508 U.S. at 377.

The district court did not reach this question. It concluded that Mr. Jackson's detention constituted an arrest and consequently evaluated Officer Sapetti's search according to the broader standard for a search incident to an arrest. It did not evaluate the search in light of *Terry* and *Dickerson* to determine whether the nature of the contraband became apparent to Officer Sapetti during the course of a reasonable search for weapons, or whether it became apparent only after manipulation of the object beyond that which *Terry* allows. *See Dickerson*, 508 U.S. at 378. Because this issue is one that is best addressed by the district court in the first instance, I would remand the case to the district court to determine whether Officer Sapetti's actions were consistent with *Terry* and its progeny.

For these reasons, I respectfully dissent.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*