UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael RANKINS, Defendant–
Appellant.

No. 03–3420.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 5, 2004.

Decided Oct. 26, 2004.

Rehearing Denied Dec. 2, 2004.

See also 2003 WL 21058536.

---

Before POSNER, KANNE, and WOOD, Circuit Judges.

## ORDER

Michael Rankins was convicted after a jury trial of possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), possession of a firearm during the commission of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A), and possession of a firearm after sustaining a felony conviction, *id.* § 922(g)(1), and was sentenced to a total of 360 months' imprisonment. On appeal, Rankins argues both that the district court erred by denying his motion to suppress evidence and that there was insufficient evidence to support his gun convictions. We affirm.

Officer Mark Castronovo was on routine patrol around 10:00 a.m. on June 2, 2002, when he observed a yellow Ford Mustang parked on a poorly maintained dead-end road outside of the Concord Commons housing project in Rockford, Illinois. Rankins was the driver and sole occupant of the car. Although the vehicle was legally parked, Castronovo thought its location suspicious and drove towards the Mustang, which was located on the other side of a fence from his patrol car. As Castronovo approached, Rankins backed down the street and out of the officer's view. Cas-tronovo radioed his dispatcher with a description of the Mustang, which he described as "a suspicious vehicle," and he drove out of Concord Commons to look for it.

Less than two minutes later, Officer Randy Berke located the Mustang and radioed Officer Castronovo to ask if he wanted the vehicle stopped. After Castronovo responded that he did, Berke called for backup and continued to follow the car for four to five blocks. Rankins then failed to stop at a stop sign, and Berke activated his flashing lights to stop the Mustang. At this time Castronovo was approaching from the opposite direction, and he angled his car into Rankins's lane. Rankins swerved around Castronovo's car and fled. Both officers then pursued Rankins for a short distance. The pursuit ended when Rankins pulled into a residential driveway and emerged from the Mustang with his hands in the air, yelling that the officers had "no probable cause" to stop him.

With his weapon drawn, Officer Castronovo ordered Rankins to move to the rear of the Mustang and place his hands on the trunk. Once Castronovo saw that Rankins had no weapon in his hands, he returned his gun to its holster. Rankins complied with the officer's demand to move to the back of the car, but when Castronovo approached to place him in handcuffs, Rankins attempted to pull away. A brief struggle ensued, ending when Castronovo used a leg sweep to knock Rankins to the ground. After Rankins was handcuffed, Castronovo searched Rankins's pockets, waistband, and pant legs, and found 50 small bags of crack cocaine, a pager, and approximately $600 in cash in his pocket. He did not search Rankins's crotch or buttocks areas. The officers then read Rankins the *Miranda* warnings, and sat him in Castronovo's patrol car while they

spoke with a witness, searched the Mustang, and consulted their computer databases to determine if he had a valid driver's license or any warrants.

But Rankins soon attracted the officers attention by either yelling or banging his head on a window in the patrol car. Rankins said his handcuffs were too tight, so Officer Castronovo removed him from the car and loosened them. As Castronovo was returning Rankins to the car, he noticed an object on the rear floorboard. After Rankins sat back down, Castronovo saw that the item was no longer there, but he looked under the front passenger seat and found a black sock that he could feel contained a handgun. Castronovo removed the sock from the car without saying anything and Rankins blurted out, "I suppose you're going to pin that gun on me also?" Castronovo had yet to remove the gun from the sock.

Rankins was transported to a police station, where he was interviewed by both officers. Officer Berke told him that he was being issued two traffic citations—for running the stop sign and attempting to flee. Rankins responded, "I got caught with 50 rocks and a pistol. Do you think I give a [expletive] about two tickets?" Berke testified that Rankins again asked to speak to the officers later that day and requested that they help him by "either getting rid of his dope or his pistol."

█ Rankins first challenges the stop of his vehicle, arguing that the officers lacked either probable cause or reasonable suspicion to make the stop and that the officers improperly exceeded the scope of the stop when they drew their weapons and attempted to handcuff him. The district court upheld the stop on two separate grounds: that Officer Castronovo had reasonable suspicion to stop the Mustang after Rankins "fled" the area of the housing project by accelerating in reverse when the patrol car approached, and also that Officer Berke had probable cause to stop Rankins after he ran the stop sign. Rankins devotes much of his brief to the district court's first rationale for the stop, but regardless of the merits of that argument, the stop of the car was independently justified once Rankins ran the stop sign.

The district court recognized that Rankins denied running the stop sign, but credited Officer Berke's testimony that Rankins did not come to a complete stop. A police officer who has probable cause to believe that a driver has committed a traffic infraction—even a minor one, *United States v. Williams*, 106 F.3d 1362, 1365–66 (7th Cir.1997)—may make a traffic stop. *United States v. Brown*, 188 F.3d 860, 864 (7th Cir.1999). The officer's subjective motivations for making the stop are irrelevant. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Berke was permitted to stop Rankins for running the stop sign, independent of any concerns about the reasonableness of Officer's Castronovo's earlier suspicions about the car's presence outside the housing project. Moreover, when Rankins refused to stop for Berke, he committed a misdemeanor that further justified the stop.

Rankins completely ignores his running of the stop sign and his failure to stop for Officer Berke, and argues that he was stopped only for driving away when Officer Castronovo first approached him. When a person in a high-crime area flees upon seeing a police officer approach, the officer may develop reasonable suspicion to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir.2003). But any argument about the applicability of *Wardlow* is irrel-

evant here because the officers acquired probable cause to stop Rankins's car when he ran the stop sign, and again when he refused to stop for Berke's flashing lights.

█ Rankins argues further that Officer Castronovo's ordering him to the rear of his car at gunpoint and the subsequent search were so unreasonable and intrusive that they transformed what Rankins says was a *Terry* stop into a de facto arrest without probable cause. These contentions are without merit for numerous reasons. First, it is reasonable for an officer to draw his weapon when he reasonably fears that a suspect he encounters may be armed. *See United States v. Mitchell*, 256 F.3d 734, 737–38 (7th Cir.2001). Here, given Rankins's refusal to stop for Officer Berke and his veering around Castronovo's patrol car, the officers were justifiably suspicious that the car's occupant was engaged in some type of illegal activity, and Castronovo's brief display of his gun until he verified that Rankins had nothing in his hands was certainly reasonable. Furthermore, traffic stops based on probable cause are themselves arrests, *see United States v. Garcia*, 376 F.3d 648, 650 (7th Cir.2004); *United States v. Childs*, 277 F.3d 947, 952–54 (7th Cir.2002) (en banc), even though a full search may not be warranted in every situation, *see Knowles v. Iowa*, 525 U.S. 113, 117–18, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998); *Garcia*, 376 F.3d at 650. Thus Rankins's contention that Castronovo's brandishing of his weapon transformed a *Terry* stop into an arrest is misplaced: Rankins was already under "arrest" for two traffic offenses at that point.

█ In any event, Rankins's argument is irrelevant to the question of whether the search was proper. Even if the traffic stop itself had not been an arrest, Rankins was unquestionably arrested after his struggle with the officers ended in his being forced to the ground and handcuffed. That arrest was based on probable cause to believe that Rankins had resisted the officers, a Class A misdemeanor in Illinois. *See* 720 ILCS 5/31–1(a). Although the officers could have made a full custodial arrest for just the traffic offenses, *Garcia*, 376 F.3d at 650, they ended up arresting Rankins for resisting them, and were thus authorized to conduct a search incident to that arrest. *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir.2004); *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000).

█ Rankins next argues that the evidence was insufficient to convict him of the two gun possession charges. His conviction must be affirmed if, viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *accord United States v. Jones*, 371 F.3d 363, 365–66 (7th Cir.2004). Rankins argues that there was insufficient evidence that he "possessed" the gun because it was found on the floor of the police car only after Castronovo had searched him for weapons and found no gun. *See United States v. Chairez*, 33 F.3d 823, 825 (7th Cir.1994) (mere fact that gun was found in same car as defendant was insufficient to prove that defendant had knowledge of the firearm's existence). This argument is without merit because the government introduced enough evidence to enable a rational jury to conclude that Rankins put the gun on the floor of the car.

Officer Castronovo testified that he followed departmental procedure by searching the interior of his patrol car—including the area under the passenger seat, where the gun was found—prior to beginning his

shift that morning. He found no contraband in his car, and there was no evidence that any other prisoners had been in the car before Rankins. The search of the car before the shift began was done in the police garage under calm conditions. In contrast, the search of Rankins was done immediately after Rankins had struggled with the officers, and a jury could conclude that Castronovo was more harried and thus less careful at that time. Plus, Castronovo offered an explanation for why he may have missed the gun on Rankins because he testified that he did not search Rankins's crotch or buttocks areas before placing him in the car. Furthermore, the fact that the sock disappeared after Castronovo saw it for the first time on the floor of the car suggests that Rankins kicked it under the seat to conceal it because he did not want his gun to be discovered. Finally, Rankins's statement that the police were going to "pin" the gun on him before Castronovo had removed the gun from the sock is particularly incriminating because it suggests strongly that Rankins knew that there was a gun concealed in the sock. His later statements that he wanted the officers to "get rid of" the pistol and that he had been caught with "50 rocks and a pistol" could also be construed as acknowledging that the gun was his. As Rankins argues, there may be alternative ways to understand these statements so they are not inculpatory, but the jury was not required to accept Rankins's explanations about his statements. *See United States v. Hughes*, 213 F.3d 323, 331 (7th Cir.2000), *vacated on other grounds*, *Hughes v. United States*, 531 U.S. 975, 121 S.Ct. 423, 148 L.Ed.2d 432 (2000) (government not required to disprove every conceivable hypothesis of innocence to sustain a conviction).

AFFIRMED.