**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2006
Decided December 12, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-1784

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:05-cr-00031 WCL |
| JERMAINE C. WHITSETT, *Defendant-Appellant.* | William C. Lee, *Judge*. |

**O R D E R**

Jermaine Whitsett was arrested and charged with possessing a firearm after a felony conviction, *see* 18 U.S.C. § 922(g), when police officers in Fort Wayne, Indiana, located a handgun in an automobile in which Whitsett was present without permission. Whitsett moved to suppress the handgun on the ground that its seizure stemmed from a pat-down search that violated *Terry v. Ohio*, 392 U.S. 1 (1968). The district court denied Whitsett's motion, and we affirm.

Shortly after Whitsett was charged with possessing the handgun, he moved to suppress it on the basis that it was "[t]he fruit of [an] illegal search." Specifically, Whitsett argued that police officers located the handgun only after they conducted a pat-down search of him that (1) was not supported by reasonable suspicion, and (2) went beyond the scope permissible for a *Terry* pat-down search. At the hearing on Whitsett's motion, the government presented the testimony of Officers Troy Jester and

Scott Straub, who together testified to the events surrounding their search and subsequent arrest of Whitsett. It also introduced a videotape of the entire event that was created with the camera on Officer Jester's squad car.

At approximately 2:00 a.m. on February 13, 2005, Officer Jester was on patrol when he received a dispatch about a "moving disturbance" in a nearby automobile. Officer Jester quickly located the automobile, and as he approached it he observed four people inside. As Officer Jester parked his cruiser behind the automobile the driver exited and approached him. She identified herself as Sparkle Ramsey, and told Officer Jester that she called the police because a man in her automobile whom she did not know refused to leave. Earlier in the evening, Ramsey stated, she offered to drive the man to his home, but when he would not tell her where he lived she ordered him to get out of the car, which he refused to do. She identified the man as the individual sitting in the rear passenger seat.

After speaking with Ramsey, Officer Jester approached the right rear passenger side of the automobile and asked the man to step out. Officer Jester observed that the man was "hunched over" and "had his hands between his legs." When the man eventually got out of the automobile it was immediately apparent to Officer Jester that he was severely intoxicated: he reeked of alcohol, he was standing with "a detectable sway," and he was combative. Officer Jester handcuffed the man and led him to the rear of the automobile, explaining that he was not under arrest at that time. With the man's permission, Officer Jester retrieved papers from the man's pocket that identified him as Jermaine Whitsett. Officers Straub and Gregory Woods then arrived on the scene, and Officer Jester informed Officer Woods that he had not yet completed a pat-down search of Whitsett. Officer Jester then returned to his squad car to run a computer check to see if Whitsett had a criminal history or outstanding warrants.

While Officer Jester checked Whitsett's criminal history, Officer Woods patted Whitsett down, and Officer Straub questioned Ramsey and the two other passengers in her automobile. Officer Straub then heard Officer Woods state that he found a bullet in Whitsett's pocket and glanced at the seat where Whitsett was sitting; there he saw, "[a]s clear as can be," a handgun lying on the floorboard propped against the rear of the passenger-side front seat. Officer Straub seized the handgun and asked Whitsett if it was his; Whitsett immediately denied that it was. Officer Jester then ran the handgun's serial number through the police department's records channel and learned that it had been reported stolen. He also learned that Whitsett had multiple felony convictions. Officer Jester accordingly arrested Whitsett for possession of stolen property, possession of a firearm by a felon, and public intoxication.

In support of his motion, Whitsett called Officer Woods to testify about the extent to which he searched Whitsett. Officer Woods stated that he began his search of Whitsett by "crushing" the outside of his jacket pockets and reaching into them,

although he could not remember what caused him to reach into the jacket pockets. Officer Woods then patted Whitsett's pants pockets and felt a "round circular object" in the front-right pocket; Officer Woods claimed that, after manipulating the object through Whitsett's pocket, he recognized that it was a bullet. He accordingly reached into Whitsett's pocket, retrieved a bullet, and informed the other police officers that he found ammunition.

The district court denied Whitsett's motion, rejecting his argument that the seizure of the handgun was the "fruit" of an improper *Terry* pat-down search. The court reasoned that: (1) the search was justified by Officer Jester's reasonable suspicion that Whitsett might be dangerous; and (2) the scope of Officer Woods's search did not exceed what is permissible under *Terry*. Therefore, the court concluded, Officer Straub's subsequent seizure of the handgun did not violate the Fourth Amendment. Shortly thereafter, Whitsett entered a conditional guilty plea to the § 922(g)(1) count, preserving his right to challenge the suppression ruling on appeal.

On appeal Whitsett renews his argument that the recovered handgun was the "fruit" of an illegal *Terry* pat-down search. He argues that Officer Jester was not authorized to detain and search him at all because he did not have a "reasonable suspicion" that Whitsett was "armed and dangerous." Moreover, Whitsett continues, Officer Woods went too far in conducting the pat-down search even if it was authorized because he (1) reached into Whitsett's jacket pockets without reason to do so; and (2) recovered the bullet from Whitsett's pants pocket only after manipulating it in the pocket for an excessive amount of time. And because the seizure of the bullet caused Officer Straub to look in Ramsey's automobile and see the handgun, Whitsett concludes, the recovery of the handgun was the direct result of an improper pat-down search. In reviewing the denial of a motion to suppress, we review all questions of law *de novo*, including the existence of reasonable suspicion and probable cause. *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004).

Although the district court properly denied Whitsett's motion to suppress, its analysis under *Terry* was misplaced. In fact, Whitsett's arguments that the pat-down search violated *Terry* are either precluded or irrelevant. First, Whitsett is precluded from challenging Officer Straub's recovery of the handgun in Ramsey's automobile because he lacked a privacy interest in the automobile. A defendant cannot successfully move to suppress evidence unless he can show that the alleged unconstitutional search invaded an area where he enjoyed a legitimate expectation of privacy. *See, e.g.*, *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006). Whitsett does not assert that he had a privacy interest in Ramsey's automobile. But even if he did, his argument would fail because passengers lack a privacy interest in the automobile in which they are present. *See United States v. Walker*, 237 F.3d 845, 848-49 (7th Cir. 2001) (citing *Rakas v. Illinois,* 439 U.S. 128, 148 (1978)). Moreover, even if Whitsett could establish that he *initially* had a privacy interest in Ramsey's automobile, that interest would have

ceased the moment Ramsey demanded that he leave. *See United States v. Mitchell*, 64 F.3d 1105, 1109 (7th Cir. 1995) (stating that defendant must show, among other things, that he "was on the premises legitimately" to establish legitimate expectation of privacy); *United States v. Duprey*, 895 F.2d 303, 309 (7th Cir. 1989) (same); *see also United States v. Cunag*, 386 F.3d 888, 893-94 (9th Cir. 2004) ("[A] 'burglar plying his trade in a summer cabin during the off season' . . . . does not enjoy a Fourth Amendment privacy interest in the summer cabin." (quoting *Rakas*, 439 U.S. at 143 n.12)).

Likewise, Whitsett is precluded from challenging Officer Straub's seizure of the handgun because he abandoned it. Unless a defendant abandons property in response to police misconduct, it is not subject to Fourth Amendment protection. *See United States v. Pitts*, 322 F.3d 449, 455-56 (7th Cir. 2003); *United States v. McDonald*, 100 F.3d 1320, 1327 (7th Cir. 1996). Property is abandoned if the defendant's voluntary statements and conduct would lead a reasonable person in the searching officer's position to believe that the defendant had relinquished his property interests, *see United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000), and here Whitsett made several statements and acted in such a way that leads us to believe that he abandoned the handgun. First, Whitsett left his handgun on the floor of Ramsey's automobile, where he was no longer a passenger, much less welcome. *See United States v. Ruiz*, 935 F.2d 982, 984-85 (8th Cir. 1991) (holding that defendant abandoned suitcase of cocaine by placing it in trunk of car in which he was not a passenger). Additionally, Whitsett immediately denied that the handgun was his. *See McDonald*, 100 F.3d at 1328-29 (stating that denial of ownership, taken at face value, allows reasonable conclusion that defendant claims no possessory interest); *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996) ("[Defendant's] voluntary denial of ownership demonstrated 'sufficient intent of disassociation to prove abandonment.'" (citation omitted)). Because Whitsett never has alleged that the police impermissibly coerced him into abandoning the handgun, his challenge to the seizure of the handgun is precluded. *See Bond*, 77 F.3d at 1013; *United States v. Rush*, 890 F.2d 45, 48 (7th Cir. 1989).

Finally, even if Whitsett was not precluded from challenging Officer Straub's seizure of the handgun, his "fruit of a poisonous tree" argument fails. Because the police officers had probable cause to arrest Whitsett for public intoxication *before* they patted him down, it is irrelevant whether the pat-down search was justifiable under *Terry*. If a challenged search occurs immediately before an arrest, it is still considered incident to a lawful arrest as long as the "fruits" of the search are unnecessary to support probable cause for the arrest itself. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."); *United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004); *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996). Whitsett's attorney asserted at oral argument that "there is no evidence in the record that

[Whitsett] was going to be arrested for public intoxication." But Officer Jester testified at the hearing on Whitsett's motion to suppress that Whitsett was, in fact, arrested for public intoxication in addition to the handgun charge. Because neither the recovered bullet, nor the recovered handgun, was needed to support probable cause to arrest Whitsett for public intoxication, Officer Woods's pat-down search of Whitsett was, in fact, a search incident to arrest; thus, Whitsett's argument that the search violated *Terry* is irrelevant. *See Rawlings*, 448 U.S. at 111; *Jackson*, 377 F.3d at 717; *Ho*, 94 F.3d at 935; *see also United States v. Robinson*, 414 U.S. 218, 228 (1973) ("*Terry* . . . affords no basis to carry over to a probable-cause arrest the limitations this Court placed on a stop-and-frisk search permissible without probable cause.").

We accordingly uphold the denial of Whitsett's motion to suppress and AFFIRM his conviction.