NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 12, 2006
Decided May 11, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-4365

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,* | Appeal from the United States<br>District Court for the<br>Central District of Illinois |
| *v.* | No. 03-20091-001 |
| DATONA D. BROWN,<br>*Defendant-Appellant.* | Michael P. McCuskey,<br>*Chief Judge.* |

## O R D E R

During the course of a routine traffic stop, Datona Brown fled from the scene and assaulted two of the arresting officers from the Decatur, Illinois Police Department. After the officers were able to restrain Brown and take him into custody, they handcuffed and locked him in their squad car. Because of Brown's suspicious actions at the scene, the officers believed that he might be in possession of a controlled substance, they proceeded to search his person and the surrounding area. Shortly thereafter they discovered a brown bag containing crack cocaine on his person in the area of his crotch. Brown was charged with possession of five grams or more of cocaine base with intent to deliver, and he filed a motion to

suppress both the cocaine and his incriminating statements to police. He now appeals and contests the district court's ruling that the search of his person was valid as incident to an arrest. We affirm.

During his patrol on September 20, 2003, Officer Christopher Hale observed Brown driving his automobile without a seatbelt,[1] and began to follow him. While being pursued, Brown accelerated his vehicle and drove through a stop sign, resulting in Officer Hale activating the warning lights on his vehicle after which Brown stopped his vehicle.

Hale approached Brown and informed him that he was going to give him two citations: one for failing to wear a seatbelt and another for running the stop sign. Hale walked back to his squad car to process the tickets. At about this time, Officer Roger Craig arrived as a backup to assist and Hale and Craig both approached Brown's car. Hale was on the driver's side and Craig on the passenger side. Hale advised Brown that he was of the opinion that he was attempting to flee when he accelerated his car and ran a stop sign. Hale asked Brown for permission to search his car and Brown refused, with Hale responding that he was going to request a canine sniff of the exterior of the car.

As Hale began to return to his squad car, Craig observed Brown reach inside his jacket pocket and, fearing that the suspect might be armed, he alerted Hale. The defendant immediately exited the car, pushing Hale aside and fled from the scene. Hale, in an attempt to restrain him, grabbed his coat, but Brown slipped out of his coat and bolted across the street. Hale chased Brown and wrestled him to the ground, while spraying him with pepper spray. While struggling, Hale observed Brown pull a small brown paper bag out of his shirt and clutch the bag in his right hand.

During the struggle Officer Craig jumped on both Hale and Brown, allowing Brown to escape and run a few more yards. The officers tackled Brown and he proceeded to resist arrest. During the ensuing fight, Brown kicked and punched Hale, all the while keeping his right hand strangely positioned beneath his body while he was on the ground. After the officers succeeded in restraining him, they patted him down and searched his person, including his pockets, but found nothing. The officers handcuffed him, locked him in the squad car, and conducted a search of the area, looking for the brown bag, but were still unable to locate it. Hale returned

---

[1] Driving without a seatbelt is a violation of Illinois law. *See* 625 Ill. Comp. Stat. 5/12-603.1 (2003).

to the squad car and instituted another more thorough search of Brown's person, and at this time discovered a small brown bag, containing crack cocaine, in the crotch of Brown's pants. The officers took custody of the brown bag, transported it with Brown to the police station, where they read him his *Miranda* rights.

Before trial, Brown moved to suppress the introduction of the crack cocaine arguing that: (1) he was not under arrest at the time of the search; and (2) there was no justification for the search of Brown's crotch area. The district court denied the motion, finding that there was probable cause to arrest Brown and the search was valid as incident to that arrest. Thereafter, Brown entered a conditional plea of guilty while preserving his right to appeal the ruling on the suppression motion.

On appeal, Brown argues that the district court erred in holding that the search was valid as incident to his arrest. He now asks this court to rule that he was not "under arrest" in spite of the fact that the officers had tackled him, restrained him, handcuffed him, and locked him in the squad car. Instead, Brown somehow contends that he was only briefly detained in order to subdue him and prevent further flight until after the search, when he was arrested and taken to the police station. We review the district court's findings of fact for clear error and its determinations of law de novo. *United States v. Sandoval-Vasquez*, 435 F.3d 739, 742 (7th Cir. 2006).

We determine whether a suspect is under arrest after looking to the totality of the circumstances surrounding any restraint on the suspect's movements created by a police officer's use of physical force or the suspect's submission to an officer's show of authority. *See Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868 (1968); *United States v. Barker*, 467 F.3d 625, 628-29 (7th Cir. 2006); *Qian v. Kautz*, 168 F.3d 949, 954 (7th Cir. 1999). Those circumstances include whether a reasonable person in the suspect's position would have felt free to leave and whether the officers have acquired physical control over the suspect, either through the use of physical force or a show of physical force, i.e., placing their hands on their armed holsters. *See California v. Hodari D.*, 499 U.S. 621, 626-28 (1991); *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980); *Leaf v. Shelnutt*, 400 F.3d 1070, 1089-90 (7th Cir. 2005); *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004). A suspect is under arrest when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on the freedom of movement of the degree which the law associates with formal arrest." *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1017 (7th Cir. 2006) (citing *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999)).

We use an objective standard in applying the case law to the facts. *Hodari D.*, 499 U.S. at 628. In this case, after Brown had initially fled the scene and assaulted the two arresting officers, and one of the officers had observed a suspicious bag, both officers were able to wrestle Brown to the ground, spray him with pepper spray, handcuff him, and lock him in the squad car. It is obvious that Brown was seized; his movements were restrained when he sat handcuffed and locked in the squad car and he clearly was not free to leave. Moreover, the officers had initially acquired physical control over him at the time they tackled him, sprayed him with pepper spray, and cuffed him. Obviously, any reasonable person in Brown's position at that time in the arrest scenario would have considered himself or herself restrained, beyond the limited *Terry*-like stop, and under "arrest." *See Ienco*, 182 F.3d at 523 ("arrest" occurs when suspects are locked in a squad car); *United States v. Swift*, 220 F.3d 502, 508 (7th Cir. 2000) (same). Brown's argument that a reasonable person would not consider himself or herself "under arrest" after being tackled, handcuffed, and locked in the back of the squad car is preposterous.

Brown argues that he was not under arrest because, after restraining and locking him in the squad car, the officers failed to pronounce the magic word ("arrest") and explicitly advise him that he was under arrest. He cites not a scintilla of case law to support his self-serving theory. Officers do not have to formally advise the suspect that he or she is under arrest or complete other formalities of this notice in order to make an arrest valid. *Dunaway v. New York*, 442 U.S. 200, 212-13; *United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004). Common sense dictates that he was under arrest. "'[T]here is no canon against using common sense.'" *United States v. Croft*, 750 F.2d 1354, 1362 (7th Cir. 1984) (quoting *Roschen v. Ward*, 279 U.S. 337, 339 (1929)).

The case of *United States v. Wilson*, 2 F.3d 226 (7th Cir. 1993), on which Brown relies and argues that no arrest occurred, is inapposite. In *Wilson*, the police saw Wilson jump out of a moving car and thereafter fled from the police and hid under a porch. *Id.* at 227. After ordering Wilson to come out from under the porch, the police used handcuffs to prevent further flight during the *Terry* stop, and this court held that the application of handcuffs alone under those circumstances did not constitute arrest. *Id.* at 231-32. The court also emphasized the short length of the detention (less than one minute) in determining that there was no arrest. *Id.* at 232.

Here, in contrast, Brown was observed operating a motor vehicle without a seatbelt, proceeded to accelerate his vehicle with the officer in pursuit, and ran a stop sign while fleeing the scene. Shortly thereafter he was apprehended, struggled with the police officers, was sprayed with pepper spray, and was once again apprehended after another struggle with the police officers. Thereafter, he was

handcuffed and locked in a squad car. Obviously, Brown was restrained to a greater degree than the suspect in *Wilson*. Moreover, Brown remained handcuffed and locked in the squad car while the officers proceeded to search the surrounding area for contraband. Under these facts, the district court did not err in determining that Brown was under arrest and in custody.

Furthermore, unlike the suspect in *Wilson*, Brown had already given the officers probable cause to arrest him. "There is probable cause to arrest if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002); *Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002). Probable cause "need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Driebel*, 298 F.3d at 643 (quoting *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)). Here, Brown failed to wear his seat belt, ran a stop sign and fled from the scene, resisted arrest and struck two police officers. Certainly the facts as set forth herein were more than sufficient to establish probable cause that Brown had violated laws against resisting arrest and aggravated assault. *See* 720 Ill. Comp. Stat. 5/31-1 (resisting or obstructing a peace officer); 720 Ill. Comp. Stat. 5/12-2(5) (aggravated assault).

Brown goes on to argue that, even if he was arrested, the district court erred in holding that the search into Brown's crotch area was within the valid limits of a search incident to arrest. He claims that the search into his crotch area was overly-intrusive, and thus the officers were required to have some specific reason to believe that Brown was concealing contraband in his crotch area before they could proceed.

It is a "bright-line rule" that officers are allowed to and should thoroughly search suspects' clothing and bodies upon arrest, even if they do not suspect at that time that the person is armed or carrying contraband for the protection of themselves and others. A search incident to arrest is reasonable and proper because officers must recover any and all weapons from the suspect in order that they might protect themselves as well as others who might come in contact with him. They must also look for and preserve evidence of a crime that might otherwise be destroyed. *See Gustafson*, 414 U.S. at 263-65; *Robinson*, 414 U.S. at 224-26; *Chimel v. California*, 395 U.S. 752, 762-63 (1969), *Jackson*, 377 F.3d at 717. No additional justification is required. *See Gustafson*, 414 U.S. at 263-65; *Robinson*, 414 U.S. at 235; *Jackson*, 377 F.3d at 716.

As we have made clear, Brown was under arrest, and thus the officers did not need any further justification to search him. Furthermore, even if cause for the

search was required, Officer Hale believed that he saw Brown holding contraband during their struggle, and it was reasonable for him to continue to search Brown to find that contraband.

The next question we will deal with is whether the search was conducted in an overly intrusive manner. We have held that the intrusiveness of a search must be balanced against the need for the search. *See Williams*, 209 F.3d at 943-44. *See also Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1270-73 (7th Cir. 1983) (holding that a valid arrest allows for a full search but not any search no matter how extreme or abusive). A search of the private areas of a suspect's body is reasonable if the suspect's private parts are not exposed to onlookers and in particular when an attempted flight from officers suggests that they must search immediately because the suspect is in all probability likely to conceal or destroy evidence. *Williams*, 209 F.3d at 943-44.

Here, Officer Hale early on had observed the suspect holding a small brown bag that he believed to contain contraband, but was initially unable to locate the bag either in Brown's clothing or in the immediate surrounding area during a search. As a result, a knowledgeable and experienced police officer would reasonably suspect that Brown had it hidden under his clothing. *See Robinson*, 414 U.S. at 224-26; *Jackson*, 377 F.3d at 716 (upholding a search into a suspect's crotch area). The search was neither more intrusive than necessary for the purpose, and at no time were Brown's body parts exposed to onlookers. The search was not intrusive.

AFFIRMED.