NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued October 7, 2015
Decided October 19, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1251

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 14-cr-2 |
| DAVE ANGLIN, *Defendant-Appellant*. | Rudolph T. Randa, *Judge*. |

## O R D E R

Dave Anglin pleaded guilty to being a felon in possession of a handgun on the condition that he could challenge on appeal the district court's denial of his motion to suppress evidence. Because the evidence is the product of a lawful investigatory stop based on reasonable suspicion that Anglin was about to commit a crime, *see Terry v. Ohio*, 392 U.S. 1 (1968), we affirm the judgment.

In December 2013, a confidential informant housed at a residential reentry facility—a "halfway house"—contacted the Bureau of Alcohol, Tobacco, Firearms, and Explosives with information that Anglin, a fellow resident at the facility, was planning an armed robbery with his brother. The informant, who had never assisted law

enforcement before, requested money and a reduction in his term of supervised release in return for his cooperation. He met with a federal agent and state police officer three days later and reported that the brothers were pressuring him to join them in committing the robbery. Anglin was "eager" to commit "any kind of robbery," the informant said. And, the informant added, the brothers recently had shown him two assault rifles and a pistol that they planned to use in a robbery.

Over the next few days, agents worked to corroborate the informant's tip. They asked the informant to identify the residence and vehicle of Anglin's brother, verified that Anglin was at the halfway house completing a federal sentence for armed bank robbery, and checked the informant's description of the vehicle driven by Anglin's girlfriend. The agents also uncovered the violent criminal histories of both Anglin brothers.

Three days after the first meeting, the informant met again with law enforcement and reported that the brothers "were intent on robbing something that week." He specified that they were targeting a bank, a drug dealer, or a McDonald's restaurant, and he agreed to record any conversations he had with them.*

The next morning, the informant notified an agent that the brothers planned to rob a "drug house" later that day. The plan was for the informant to meet Anglin's brother a few blocks from the hallway house, and together they would meet Anglin, who was first stopping at his girlfriend's house. The agent instructed the informant to go along with the plan, the informant was picked up by Anglin's brother, and police intercepted the men and arrested them.

Meanwhile, ten state and federal law enforcement officers converged on the residence of Anglin's girlfriend (where the informant had said that Anglin would be). Anglin exited the building with a teenage boy, a woman, and a young child. He entered

---

* The informant was able to record conversations with the brothers, including a statement made by Anglin that he was "going to the grave before [he'd] go back to jail." But agents did not listen to that recording until after Anglin was arrested. So, as both the government and Anglin noted after oral argument, the agents could not actually have relied on that statement as a reason to use force to take Anglin into custody. *See United States v. Wooden*, 551 F.3d 647, 650 (7th Cir. 2008) ("[T]he police are entitled to act on what is known at the time; information turned up later neither vindicates nor condemns a search.")

the driver's seat of a parked vehicle, the officers were ordered to "move in," and eight officers in three vehicles surrounded the car, then approached him with their weapons drawn. One of the officers opened the driver-side door of Anglin's vehicle, grabbed his wrist, ordered him out, directed him onto the ground, and handcuffed him. The officer then patted down the outside of Anglin's clothing and discovered a firearm concealed in his waistband. Anglin did not resist the officers at any point during the confrontation. He was taken into custody and charged with possessing a firearm as a felon, *see* 18 U.S.C. § 922(g)(1).

Anglin moved to suppress the gun and an incriminating statement that he had made to police contending that they were the products of an unlawful seizure. Anglin argued that he was arrested without probable cause at the moment that he was forced to the ground and handcuffed. The government countered that (1) the officers had probable cause to believe that Anglin was about to commit an armed robbery; (2) even if they did not have probable cause, they had reasonable suspicion, which justified the brief detention and search of Anglin; (3) even if their actions had exceeded the scope of a permissible investigatory stop, the gun should not be suppressed because officers inevitably would have discovered it through a lawful pat-down of Anglin; and (4) because the officers did not act in "deliberate, reckless, or grossly negligent disregard" of the Constitution, suppression under the exclusionary rule was unwarranted.

A magistrate judge issued a report recommending that the district court deny Anglin's motion to suppress. The magistrate judge first explained that the officers "had reason to believe that Anglin was about to be engaged in an armed robbery and, accordingly, they were justified in stopping Anglin and frisking him for weapons." And, the magistrate judge added, the seizure did not exceed the bounds of a lawful investigatory stop and become a formal arrest until after the officers discovered the firearm. Finally, the magistrate judge concluded that "the officers arguably had probable cause to arrest Anglin based on the information provided by the CI and the officers' first-hand observations."

Anglin objected to the magistrate judge's recommendation. But the district judge adopted the recommendation and rejected Anglin's contention that his detention had exceeded the bounds of a permissible investigatory stop. Anglin pleaded guilty to the one-count indictment but reserved his right to appeal the denial of his motion to suppress. The district court sentenced Anglin to 120 months' imprisonment.

On appeal, Anglin concedes that the officers had reasonable suspicion to stop and briefly detain him, *see Terry*, 392 U.S. at 21–22; *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1901 (2015), but maintains that the officers' actions exceeded the bounds of a permissible investigatory stop and instead constituted a de facto arrest. Anglin emphasizes that the officers' actions—surrounding him with guns drawn, grabbing him, pulling him from his vehicle, directing him onto the ground, and handcuffing him—are more commonly associated with formal arrests, and he notes that the officers admitted that they intended before the stop to "take him into custody."

We disagree with Anglin that his seizure was a de facto arrest requiring probable cause. Although we have warned that techniques more commonly associated with formal arrests—like applying handcuffs and drawing weapons—should not become "the norm during an investigatory detention," *Matz*, 769 F.3d at 526; *see United States v. Howard*, 729 F.3d 655, 661 (7th Cir. 2013); *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013), we also have explained that those techniques do not necessarily transform an investigatory stop into a de facto arrest, *see Matz*, 769 F.3d at 525–26; *United States v. Smith*, 697 F.3d 625, 632 (7th Cir. 2012); *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). And although Anglin correctly notes that some of our earlier decisions look to officers' intent in determining the scope of a seizure, *see United States v. Smith*, 3 F.3d 1088, 1095 (7th Cir. 1993); *United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988), more recent cases have explained that an officer's subjective intent is irrelevant for purposes of Fourth Amendment analyses, *see Bullock*, 632 F.3d at 1012; *United States v. Garcia*, 376 F.3d 648, 651 (7th Cir. 2004); *United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir. 1993).

The relevant inquiry is whether the officers' actions were reasonable under the circumstances known to the officers at the time of the stop and whether the officers legitimately feared for their safety. *See United States v. Ruiz*, 785 F.3d 1134, 1143 (7th Cir. 2015); *Matz*, 769 F.3d at 526. Here, the officers had been informed that Anglin was planning to commit an armed robbery the morning of the stop and that he possibly was armed with semiautomatic weapons. Under the circumstances, the officers were justified in taking forceful protective measures. *See Smith*, 697 F.3d at 632 (explaining that it was "entirely reasonable" for officers to approach suspected armed bank robbers with guns drawn and apply handcuffs); *United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir. 1994) (explaining that requiring suspect to lie face down on the ground is the safest way for officers to approach dangerous suspect and determine whether the person is armed); *United States v. Lechuga*, 925 F.2d 1035, 1040 (7th Cir. 1991) (drawing weapons may be

reasonable if the "suspect is thought to be armed, or even when he is thought to be involved in criminal activity in which the use of weapons is a commonplace").

Anglin responds that it was unreasonable for the officers to base their intrusive actions on allegations from an informant who had no prior relationship with law enforcement and whose information was largely uncorroborated. As Anglin correctly notes, more intrusive stops must be justified with a higher degree of suspicion. *See Hamilton v. Vill. of Oak Lawn, Ill.*, 735 F.3d 967, 970 (7th Cir. 2013); *United States v. Chaidez*, 919 F.2d 1193, 1198 (7th Cir. 1990). But the officers' suspicion here was supported by the informant's statements and the officers' corroboration of those statements. The informant disclosed details that only someone close to Anglin and his brother would know, including their phone numbers and that they possessed weapons and were planning to commit an armed robbery. *See Illinois v. Gates*, 462 U.S. 213, 234 (1983) (explaining that informant's "explicit and detailed description of wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case"); *United States v. Etchin*, 614 F.3d 726, 736 (7th Cir. 2010) (affirming district court's finding of probable cause when informant gave first-hand account of alleged wrongdoing).

And, although the officers were unable to corroborate allegations of criminal activity until after the stop, they *were* able to corroborate numerous innocuous details, including the vehicle driven by Anglin's girlfriend, the residence of Anglin's brother, and Anglin's criminal history. *See Alabama v. White*, 496 U.S. 325, 331 (1990) (explaining that informant who "is shown to be right about some things" is "probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity"); *United States v. Brown*, 366 F.3d 456, 460 (7th Cir. 2004) (explaining that informant's story "assumed a high degree of reliability" after officers corroborated information). Moreover, the officers corroborated information about Anglin's *future* actions—including the brothers' locations on the morning of the planned robbery—further demonstrating the informant's familiarity with Anglin's affairs. *See White*, 496 U.S. at 332; *United States v. Huebner*, 356 F.3d 807, 814 (7th Cir. 2004). And by revealing his identity, meeting with agents, and agreeing to record conversations with the brothers, the informant made himself accountable if the tip turned out to be false, which gave the officers further reason to credit his allegations. *See United States v. Robinson*, 537 F.3d 798, 802 (7th Cir. 2008); *Brown*, 366 F.3d at 459.

Finally, the same information that supported the officers' reasonable suspicion also gave them probable cause to arrest Anglin: A reasonably credible informant

supplied information that Anglin was planning a robbery. *See Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 716 (7th Cir. 2013); *Matthews v. City of East St. Louis*, 675 F.3d 703, 706–07 (7th Cir. 2012). So there is an alternative ground here for upholding the officers' conduct. It was proper to draw weapons, handcuff Anglin, and frisk him as part of a lawful arrest.

AFFIRMED.